

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-11-2007

# Vega v. USA

Precedential or Non-Precedential: Precedential

Docket No. 05-5105

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Vega v. USA" (2007). *2007 Decisions.* Paper 663.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/663

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-5105

———

DAGOBERTO VEGA,

Appellant

v.

UNITED STATES OF AMERICA

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 05-cv-00305J)
District Judge:  Honorable Kim R. Gibson

———

Argued October 25, 2006
Before:  SMITH, FISHER and COWEN, *Circuit Judges*.

(Filed: July 11, 2007 )

Gail E. Laser (Argued)
260 Madison Avenue, 22nd Floor
New York, NY  10016
        *Attorney for Appellant*

Laura S. Irwin
Kelly R. Labby
Office of United States Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA  15219

Henry J. Sadowski (Argued)
Federal Bureau of Prisons
U.S. Customs House, 7th Floor
2nd and Chestnut Streets
Philadelphia, PA  19106
        *Attorneys for Appellee*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

Appellant Dagoberto Vega filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2241, requesting credit for the time he was incarcerated from August 27, 1998 through July 30, 1999, and credit for the period from April 17, 2002 through February 25, 2004, during which he was at liberty after being erroneously released from confinement by New York prison

officials. Following the report and recommendation of the Magistrate Judge, the District Court denied Vega's petition. On appeal, Vega challenges the calculation of his sentence, citing as error the District Court's failure to award him credit for these periods. The question of whether an erroneously released prisoner is entitled to credit for time spent at liberty is one of first impression for this Court. As explained below, we agree with the District Court's determination that no credit should be accorded for the period of time between August 27, 1998 and July 30, 1999, but we will remand for further consideration in accordance with this opinion of whether Vega should receive credit for the time he spent at liberty.

I.

Vega was arrested by New York state authorities on August 27, 1998, while on state parole. The State of New York charged him with drug possession, assault, and violation of parole. On July 30, 1999, he was transferred into federal custody pursuant to a writ of habeas corpus *ad prosequendum* and charged with federal offenses based upon the same conduct as that which gave rise to most of the state charges. On August 1, 2001, the State dismissed all of its charges, except for the parole violation. On December 10, 2001, after pleading guilty to the federal charges and being sentenced to 96 months, Vega was returned to state custody for completion of his parole violation sentence after the U.S. Marshals Service for the Eastern District of New York lodged a federal detainer advising the state warden to notify the Marshals Service when Vega had completed his state sentence. The Marshals Service never received a letter of acknowledgment confirming receipt of the

federal detainer.  Nor did the Marshals Service inquire of the State whether it was received and, if received, whether it would be honored.

The State revoked Vega's parole on February 8, 2002, and he received a 44-month sentence.  Upon completion of that sentence on April 16, 2002, instead of being transferred to the custody of the Marshals Service pursuant to the detainer they had attempted to lodge at the state prison, Vega was released on April 17, 2002.  The New York prison warden allegedly told Vega that there was no detainer on file for him. Slightly less than two years later, on February 25, 2004, federal authorities arrested Vega and returned him to custody to complete his federal sentence.

After exhausting his administrative remedies, Vega filed a petition for a writ of habeas corpus, which the District Court denied.  The District Court determined that Vega had received full credit on his federal sentence for the period from July 30, 1999 through November 29, 2001, the day before he was sentenced on the federal charges, and that he therefore still had 67 months and 28 days left to serve.  The Court further explained that Vega was not entitled to credit toward his federal sentence for time spent at liberty because his release resulted from the error of a separate sovereign.

II.

The District Court had jurisdiction under 28 U.S.C. § 2241.  Jurisdiction is proper in this Court under 28 U.S.C. §§ 1291 and 2253.  *See Marshall v. Cathel*, 428 F.3d 452, 453

(3d Cir. 2005). This Court reviews a District Court's denial of habeas corpus relief de novo. *Reinert v. Larkins*, 379 F.3d 76, 83 n.2 (3d Cir. 2004); *Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998). We review the District Court's factual findings for clear error. *See*, *e.g.*, *Ruggiano v. Reish*, 307 F.3d 121, 126 (3d Cir. 2002) ("In reviewing a federal habeas judgment, 'we exercise plenary review over the district court's legal conclusions and apply a clearly erroneous standard to its findings of fact.'") (quoting *Rios v. Wiley*, 201 F.3d 257, 262 (3d Cir. 2000)).

III.

Vega contests the District Court's denial of credit for the period between his August 27, 1998 arrest and the July 30, 1999 transfer to federal custody, contending that the Bureau of Prisons ("BOP") is incorrect in its contention that this time period has been credited against his parole violation offense. Vega offers scant, and largely speculative, support for the proposition that he received only a 90-day sentence on his parole violation. He claims that he was a Category 3 parole violator and therefore was entitled to a sentence on the parole violation that was the equivalent of time spent in custody on the parole violation warrant plus three months, as opposed to the 1,261 days certified by the Division of Parole. N.Y. Comp. Codes R. & Regs. tit. 9, § 8005.20(c)(3)(ii). However, he points to nothing in the record to show that he was a Category 3 violator. He merely asserts that he fell into that category and should have received only a three-month sentence. He has therefore failed to demonstrate his right to relief. *See United States v. Harris*, 876 F.2d 1502, 1506-07 (11th Cir. 1989) ("Where a convicted

5

federal prisoner claims credit for time served in a state jail or prison, the burden is on the prisoner to establish that the state confinement 'was exclusively the product of such action by Federal law-enforcement officials [so] as to justify treating the State jail as the practical equivalent of a Federal one.'" (quoting *Ballard v. Blackwell*, 449 F.2d 868, 869 (5th Cir. 1971))).

The Government states that no credit is due to Vega because this time period had already been credited against his state parole violation sentence of 1,261 days, so that it was unavailable as credit toward his federal charge. *See* 18 U.S.C. § 3585(b) (allowing credit for time spent in detention prior to the date of sentencing that has not been credited against another sentence). Moreover, the Government notes that the parole violation conduct was unrelated to the conduct that formed the basis for his federal charge. The conduct for which Vega's parole violation warrant issued was assault, failing to report to a parole officer, and leaving his residence without permission.

The District Court correctly found that the period of time between August 27, 1998 and July 30, 1999, should not have been credited to the defendant as part of his federal sentence. The BOP allotted this time to Vega's state parole violation term, and therefore it is not available to be credited toward his federal sentence on the narcotics offense. 18 U.S.C. § 3585(b). Accordingly, the District Court's finding is not clearly erroneous.

6

IV.

A.

The principal issue before us is whether Vega should receive credit toward his federal sentence for the nearly two years he spent at liberty as a result of his erroneous release from the state penitentiary system.  Vega proposes that his two periods of incarceration should have run continuously, and thus, the unintentional lapse between the two sentences entitles him to have the intervening period of liberty counted toward his federal sentence.  This proposition finds support in the case law of other circuits, where it is alternately referred to as the "rule" or the "doctrine" of credit for time at liberty.[1]  The origin of the rule in federal case law can be traced to *White v. Pearlman*, 42

---

[1]The Eleventh Circuit made particular note of this apparent terminological disagreement.  *See United States v. Barfield*, 396 F.3d 1144, 1147 n.1 (11th Cir. 2005).  This opinion adopts the "rule" nomenclature, in accordance with the Seventh Circuit's observation that "[p]unishment on the installment plan is forbidden," and explanation that the "common law *rule*, . . . that unless interrupted by fault of the prisoner (an escape, for example) a prison sentence runs continuously from the date on which the defendant surrenders to begin serving it," was "only a *rule* of interpretation . . . not a constitutional command." *Dunne v. Keohane*, 14 F.3d 335, 336-37 (7th Cir. 1994) (emphasis added).  As discussed below, we are in accord with the spirit, if not the exact letter, of the Seventh Circuit's understanding of the rule.

7

F.2d 788 (10th Cir. 1930). In that case, the Tenth Circuit established that "where a prisoner is discharged from a penal institution, without any contributing fault on his part, and without violation of conditions of parole, [] his sentence continues to run while he is at liberty."[2] *Id.* at 789. However, the court noted that "[a]s to whether a prisoner, who knows a mistake is being made and says nothing, is at fault, we do not now consider." *Id.*

While courts vary in their interpretation and application of the rule, most agree that a mere delay in the commencement of a sentence is insufficient to give a prisoner the right to credit for time at liberty. Most recently, in *Leggett v. Fleming*, 380 F.3d 232 (5th Cir. 2004), the Fifth Circuit reiterated that "we have also held that a delay in the commencement of a sentence by itself does not constitute service of that sentence." *Id.* at 234; *but see Smith v. Swope*, 91 F.2d 260, 262 (9th Cir. 1937) ("The prisoner is entitled to serve his time promptly if such is the judgment imposed, and he must be deemed to be serving it from the date he is ordered to serve it and is in the custody of the

---

[2]A number of circuits, including our own, have adopted the holding in *White*. *See Free v. Miles*, 333 F.3d 550, 554 (5th Cir. 2003) ("[I]nadvertent prisoner *releases* . . . present circumstances that courts have repeatedly held to be deserving of credit for time served."); *United States ex rel. Binion v. O'Brien*, 273 F.2d 495, 498 (3d Cir. 1960).

marshal under the commitment, if, without his fault, the marshal neglects to place him in the proper custody.").[3]

Courts adopting the rule also seem to generally agree upon the "power of the government to recommit a prisoner who

[3]However, some courts have held that if the authorities cause an excessive delay in the commencement of a sentence, they may waive jurisdiction of their right to execute a sentence. *See Shields v. Beto*, 370 F.2d 1003, 1004-06 (5th Cir. 1967) (noting that "delay in execution of a sentence is repugnant to the law"). The Fifth Circuit explained that waiver is only appropriate in limited circumstances:

> [I]t is not sufficient to prove official conduct that merely evidences a lack of eager pursuit or even arguable lack of interest. Rather the waiving state's action must be so affirmatively wrong or its inaction so grossly negligent that it would be unequivocally inconsistent with "fundamental principles of liberty and justice" to require a legal sentence to be served in the aftermath of such action or inaction.

*Piper v. Estelle*, 485 F.2d 245, 246 (5th Cir. 1973); *accord Shelton v. Ciccone*, 578 F.2d 1241, 1244 (8th Cir. 1978). Waiver differs from the time spent at liberty rule because waiver prevents authorities from re-incarcerating a prisoner even if that prisoner still has time left on his sentence. *See Shields*, 370 F.2d at 1006. Vega does not assert a serious waiver argument here.

9

is released or discharged by mistake, where his sentence would not have expired if he had remained in confinement." *White*, 42 F.2d at 789; *see also Green v. Christiansen*, 732 F.2d 1397, 1399 (9th Cir. 1984) ("A ministerial mistake does not necessarily excuse Green from serving the rest of his sentence."). In other words, a mistaken release does not prevent a government from reincarcerating a prisoner who has time to serve. The question is whether he should be given credit against his sentence for the time he was at liberty.

To this point, we have had little to say on the rule of credit for time at liberty. In fact, we have only a single case that has addressed the reasoning of *White v. Pearlman – United States ex rel. Binion v. O'Brien*, 273 F.2d 495 (3d Cir. 1960). In *O'Brien*, the prisoner was serving both a term of probation imposed by the state of Nevada and a prison sentence in the state of Texas. He was released on bail from his Texas imprisonment pending the outcome of a Supreme Court case. During the time he was free, he was required to report to a Nevada probation officer on a weekly basis, which he did. His Nevada term of probation ended during the time he was on bail from Texas, but he continued to report to the probation officer until he was returned to Texas to fulfill his sentence.

The prisoner's claim in a habeas petition was that he deserved credit for the time he reported to the probation officer after his Nevada term of probation had ended but before he was returned to Texas. Relying on *Smith* and *White*, we held that the prisoner deserved credit for the time he was on bail. *Id.* at 498. We stated that *Smith* and *White* "stand for the proposition that where an individual's liberty is restrained by the act of an officer

10

of the United States having authority to exercise restraint, such individual is entitled to credit for the period of that restraint towards service of his sentence." *Id.* Because the prisoner was required to report to a probation officer longer than his Nevada probation required, he was entitled to have time credited against his Texas term of incarceration.

*O'Brien* used *White* to support a different proposition than most courts relying on it. The narrow holding of *O'Brien* is that when a prisoner is restrained to the point of practical imprisonment, he must be granted credit for that time. Therefore, *O'Brien* does not respond to the related question of what happens when a prisoner is not restrained, but should have been, because of governmental negligence.

B.

The diverging paths taken by courts of appeals and the lack of any precedent from this Court compel us to formulate a test which district judges may apply in resolving claims for credit for time at liberty when a prisoner has been erroneously released by one sovereign without having completed an obligation to a separate sovereign. In fashioning this test, we take full cognizance of the important interests at stake.

As a preliminary matter, we note that the interests upon which we base this test do not have constitutional stature. *See Dunne*, 14 F.3d at 336-37. Vega asserts that he has a due process right to receive credit for the time at liberty. The Supreme Court has directed that "in a due process challenge to executive action, the threshold question is whether the behavior

11

of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). Several courts have suggested that "a relatively high degree of culpability is required to shock the conscience in this context of delayed execution [of a sentence]." *See Bonebrake v. Norris*, 417 F.3d 938, 943 (8th Cir. 2005); *Hawkins v. Freeman*, 195 F.3d 732, 742 (4th Cir. 1999).

Assuming that the reincarceration of a defendant after a period at liberty meets the *Lewis* standard, the question becomes whether "the government's conduct violate[s] one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Bonebrake*, 417 F.3d at 944 n.2 (internal quotation omitted). Navigating through the sea of potential rights has proven challenging for courts, and none have satisfactorily identified a concrete interest upon which to anchor the right to procedural due process in interrupted detention cases. *See United States v. Sanders*, 452 F.3d 572, 583 (6th Cir. 2006); *Hawkins*, 195 F.3d at 750. We are likewise unable to conclude that credit for time spent at liberty is among those "fundamental principles of liberty and justice which lie at the base of all our civil and political institutions." *Powell v. Alabama*, 287 U.S. 45, 67 (1932).

Vega contends that it is a violation of the fundamental principles of liberty and justice to require a prisoner who has been erroneously released and has begun the rehabilitation process to return to incarceration. Other courts have declined to

12

find due process violations in similar circumstances. *See*, *e.g.*, *Thompson v. Cockrell*, 263 F.3d 423, 426 (5th Cir. 2001) ("[T]he Due Process Clause does not by itself prohibit states from denying prisoners calendar time after an erroneous release."); *Hawkins*, 195 F.3d at 746-47 (holding that an erroneously released prisoner did not suffer a deprivation of his substantive due process rights in being returned to prison); *Camper v. Norris*, 36 F.3d 782, 784-85 (8th Cir. 1994) (noting that where "the only evidence of the state's negligence was its failure to deliver the mandate by certified mail, . . . [t]his failure does not amount to the type of affirmative wrong or gross negligence that is required to violate Camper's due process rights," and questioning whether a due process right exists such that "it is fundamentally unfair for the state to incarcerate [a defendant] after . . . inordinate delay," or that "it is unconscionable to incarcerate [a defendant] after he has rehabilitated himself and started a new life"); *but see Johnson v. Williford*, 682 F.2d 868, 873 n.3 (9th Cir. 1982) (holding that it would be inconsistent with fundamental principles of liberty and justice to return Johnson to prison where the federal authorities took no action on the detainer). We likewise decline to find a due process violation here.

Because we do not find a constitutional basis upon which to anchor the rule of credit for time spent erroneously at liberty, the roots of the rule must be located elsewhere. In this respect, we look to the common law. In *Dunne v. Keohane*, the Seventh Circuit explained that, under the common law, "[t]he government is not permitted to delay the expiration of the sentence either by postponing the commencement of the sentence or by releasing the prisoner for a time and then

13

reimprisoning him." 15 F.3d at 336 (also noting that "[t]he common law rule has not been successfully invoked for many years . . . ."); *see also Cox v. United States ex rel. Arron*, 551 F.2d 1096, 1099 (7th Cir. 1977) (noting the continued vitality of the "common law rule prohibiting imprisonment by installments"); *Albori v. United States*, 67 F.2d 4, 7 (9th Cir. 1933). This common law rule is the sole basis upon which Vega may seek to recover the entirety of the time he spent erroneously at liberty.[4]

Looking to the common law, we find that three interests are of paramount importance when determining whether an erroneously released prisoner should be granted credit for the time he was at liberty. The first is simple fairness toward the prisoner. As the Tenth Circuit stated in *White*:

---

[4]Despite the lack of a liberty interest in credit for the entire time he spent at liberty, Vega has a liberty interest in good time credits, which he does not appear to have been awarded for the period between his release from the state facility and reincarceration in federal prison. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) ("But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, *the prisoner's interest has real substance* and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." (emphasis added)); 18 U.S.C. § 3624(b)(1) (creating the right in the federal system).

14

> A prisoner has some rights. A sentence of five years means a continuous sentence, unless interrupted by escape, violation of parole, or some fault of the prisoner, and he cannot be required to serve it in installments. Certainly a prisoner should have his chance to re-establish himself and live down his past.

42 F.2d at 789. In short, a prisoner has a right to serve his sentence continuously and in a timely manner, and to resettle after he has served his sentence without the fear that the government, at some undetermined point in the future, will reincarcerate him.

In addition to affecting a prisoner's rights, allowing the delayed or interrupted service of a sentence grants the officers entrusted with the execution of sentences excessive power. As the Ninth Circuit pointed out in *Smith*,

> If a ministerial officer, such as a marshal, charged with the duty to execute the court's orders, fails to carry out such orders, that failure cannot be charged up against the prisoner. . . . Any other holding would give the marshal, a ministerial officer, power more arbitrary and capricious than any known in the law. A prisoner sentenced for one year might thus be required to wait forty [years] under the shadow of his unserved sentence before it pleases the marshal to incarcerate him. Such authority is not even granted to courts of justice, let alone their ministerial officers.

15

91 F.2d at 262. As the sole entity responsible for execution of a prisoner's sentence, the government bears the burden of ensuring that the sentence is carried out in a timely manner, and there is an important policy consideration in encouraging that it does just that.

However, as important as the rights of prisoners and the need to limit the capricious exercise of governmental power is the government's and society's interest in convicted criminals serving out their sentences. *Artez v. Mulcrone*, 673 F.2d 1169, 1171 (10th Cir. 1982) ("[S]ociety has a legitimate interest in ensuring that prisoners convicted of serious crimes not be released before serving their full sentences unless they are rehabilitated."). Therefore, any rule we articulate must be heedful of these three competing interests and ensure that all interested parties – the prisoner, government and society – share equally in the benefits and burdens of such a rule.

C.

With these important interests in mind, we turn to the proper formulation of the doctrine. Vega proposes a totality of the circumstances test like that used in *United States v. Martinez*, 837 F.2d 861 (9th Cir. 1988), and more recently in *United States v. Mercedes*, No. 90-Cr. 450, 1997 U.S. Dist. LEXIS 3009, at *10-11 (S.D.N.Y. Mar. 17, 1997) (unpublished); *see also DeWitt v. Ventetoulo*, 6 F.3d 32, 35 (1st Cir. 1993). In particular, Vega asks us to look to the degree of the Government's negligence, the length of the delay from his release to his apprehension, the fact that he was on state parole while at liberty, and the fact that he maintained employment and

lived openly in the community. He asserts that these factors weigh in favor of awarding him credit for the time he spent at liberty.

The Government proposes that only gross negligence on the part of the federal government should relieve a prisoner from having to serve the full extent of his sentence, and that erroneously released prisoners must have clean hands in order to receive credit for time spent at liberty. The Government asserts that Vega bears some fault because he did not contact federal authorities upon his release from state prison, even though he was required by the federal Judgment and Commitment Order to report to the U.S. Probation Office following his release from the Bureau of Prisons.[5] Therefore, the Government argues, he could not have been under the mistaken impression that he had completed his state *and* federal sentences, because if he had thought that he had fully served his time, he would have reported to the Probation Office. This line of reasoning would place responsibility for the execution of a prisoner's sentence at least partly on the prisoner, something that we are not inclined to do. *See*, *e.g.*, *Martinez*, 837 F.2d at 866 ("[J]ust as a defendant has no duty to bring himself to trial, . . . he has no affirmative duty to aid in the execution of his sentence." (citing *Barker v. Wingo*, 407 U.S. 514, 527 (1972))).

---

[5]We observe that Vega was not in violation of the Judgment and Commitment Order since, by its very terms, he was not released by federal authorities, but by the State. His obligation to report to the Probation Office was only triggered upon release from the Federal Bureau of Prisons.

17

While both Vega and the Government have presented compelling arguments for their tests, we find that neither test properly balances the interests at stake. Therefore, we adopt the test laid out below, which takes appropriate consideration of the prisoner's interest in serving his sentence in a continuous and timely manner, the need to limit the arbitrary use of governmental power, and the government's and society's interest in making sure a prisoner pays the debt he owes to society. Therefore, in order for a prisoner to receive credit for time he was erroneously at liberty, the prisoner's habeas petition must contain facts that demonstrate that he has been released despite having unserved time remaining on his sentence. Once he has done this, the burden shifts to the government to prove either (1) that there was no negligence on the part of the imprisoning sovereign, or (2) that the prisoner obtained or retained his liberty through his own efforts.

This test is similar to tests created by our sister circuits who have addressed the issue. *See*, *e.g.*, *Martinez*, 837 F.2d at 865 ("Under the doctrine of credit for time at liberty, a convicted person is entitled to credit against his sentence for the time he was erroneously at liberty provided there is a showing of simple or mere negligence on behalf of the government and provided the delay in execution of sentence was through no fault of his own."). The only difference here is the burden shifting, which we find gives effect to the language of the habeas framework. As with any habeas petition, this test puts the initial burden on the prisoner to show his right to relief, which he does by indicating that his right to serve his sentence continuously has been denied him. *See* 28 U.S.C. § 2242. The test then requires the court to grant the petition unless the respondent

18

government can "show cause why the writ should not be granted." 28 U.S.C. § 2243. The burden shifting scheme also places the burden on the party that has greater access to documents tending to prove a lack of governmental negligence or prisoner fault.

1.

The government may first show cause to deny the prisoner's habeas petition by proving that there was no governmental negligence. The rule of credit for time at liberty serves as a limit on the power of the marshals or ministerial officers engaged in imprisoning defendants, and encourages these same officials to take responsibility for the prisoners with whose custody they are charged. *Shelton v. Ciccone*, 578 F.2d 1241, 1245 (8th Cir. 1978); *see also Smith*, 91 F.2d at 262 (stating that allowing a ministerial officer to reimprison a prisoner after he was released because of governmental negligence would result in granting that officer "power more arbitrary and capricious than any known in the law"); *Dunne*, 14 F.3d at 336 ("The government is not permitted to play cat and mouse with the prisoner, delaying indefinitely the expiation of his debt to society and his reintegration into the free community. Punishment on the installment plan is forbidden."). To allow a prisoner to receive credit for time he spent at liberty through no fault of the government would do little to encourage governmental responsibility in the timely execution of a prisoner's sentence. *Leggett*, 380 F.3d at 235-36.

Nearly every court to have considered the rule of credit for time at liberty has required that the government's actions in

19

releasing or failing to incarcerate the prisoner be negligent. *See id.* at 235; *Green*, 732 F.2d at 1400; *United States v. Croft*, 450 F.2d 1094, 1097 (6th Cir. 1971); *Gillman v. Saxby*, 392 F. Supp. 1070, 1073 (D. Haw. 1975); *Derrer v. Anthony*, 463 S.E.2d 690, 693 (Ga. 1995). We, therefore, have little difficulty joining these courts and finding that habeas relief is inappropriate where the government's hands are entirely clean. However, even simple negligence, rather than the gross negligence suggested by the Government, can defeat a claim of clean hands. *See Green*, 732 F.2d at 1399-1401 (granting prisoner credit for time at liberty even though governmental actions were not so egregious as to constitute gross negligence thereby allowing waiver).

However, the question that remains is whether the government need show only that the imprisoning sovereign, in this case the United States, was free from negligence, or whether it must also show that any independent sovereign that was involved in the release, in this case the State of New York, was also free from negligence. In other words, is negligence on the part of *any* sovereign sufficient, or must the negligence rest with the imprisoning sovereign? The courts to have addressed this issue are divided. The Ninth Circuit has held that negligence on the part of any governmental entity is sufficient to allow credit for time spent at liberty, *Clark v. Floyd*, 80 F.3d 371, 374 (9th Cir. 1995), while the Fifth Circuit has held that a prisoner should not receive credit for time he is at liberty when his erroneous release is the mistake of an independent sovereign, *Leggett*, 380 F.3d at 235-36. We join our colleagues on the Fifth Circuit in holding that the imprisoning sovereign must be negligent.

20

In *Clark*, the defendant was convicted in a federal district court of drug offenses and sentenced to two consecutive five-year prison terms. While he was on bail pending an appeal, he was arrested in Montana, charged and convicted of state drug offenses and immediately began to serve a forty-year sentence. While he was serving this state sentence, the federal court issued a writ of habeas corpus *ad prosequendum* so that Clark could face probation revocation. At the probation hearing, the district court sentenced Clark to a third five-year term. The Marshals Service returned Clark to state prison, lodged a detainer with the Montana State Prison Records Office, and received acknowledgment of the detainer. However, when Clark was released on parole by Montana, authorities failed to notify the Marshals Service. Clark was taken into federal custody three years later.

In a brief opinion, the Ninth Circuit majority held that Clark should be given credit for the time he spent at liberty. Because Clark was released "through the inadvertence of agents of the government and through no fault of his own," *id.* at 374 (internal quotation marks and citation omitted), Clark deserved to have time credited toward his federal sentence. However, Judge Fernandez filed a heated dissent, arguing that Clark did not deserve credit because the federal authorities had made no mistake and Clark had made no affirmative steps to serve his federal sentence. *Id.* at 375 (Fernandez, J., dissenting).

Picking up on Judge Fernandez's arguments, the Fifth Circuit held nine years later that a prisoner may not receive credit for time he spent at liberty where a sovereign that is independent of the imprisoning sovereign was responsible for

21

the erroneous release. In *Leggett*, while in state prison for a probation violation, the defendant was transferred through a writ of habeas corpus *ad prosequendum* to federal district court to face charges of being a felon in possession. He pleaded guilty, was sentenced to seventy months imprisonment, and was then returned to state prison. At the time of his return, the Marshals Service lodged a detainer with the Sheriff's Department, which acknowledged receipt of the detainer. After the parole board revoked Leggett's probation, he was transferred to the Texas Department of Criminal Justice, but his detainer did not travel with him. Therefore, when he was released from prison, the Marshals Service was not notified. Leggett was picked up a year later on a fugitive warrant for violating his state parole, but again federal authorities were not notified. The Marshals Service did not arrest Leggett until approximately three years after he had initially been released from custody.

Based on these facts, the Fifth Circuit held that Leggett did not deserve credit for the time he was at liberty. It stated that "the errors of state officials should not impact a prisoner's service of his federal sentence." *Leggett*, 380 F.3d at 235. It continued, "[w]here there is no evidence that the governmental authority seeking to enforce the prisoner's sentence has erred, a prisoner should not be allowed to avoid service of that sentence." *Id.* at 235-36.

We are persuaded by the reasoning of the Fifth Circuit and Judge Fernandez's dissent. Because the rule of credit for time at liberty serves policy goals that encourage fairness to the defendant, responsibility and restraint on the part of the officials executing the sentence, and service of the time owed to society,

22

we choose not to formulate a rule that does not encourage one of those goals. Were we to allow a prisoner credit for time spent at liberty where no fault lies with the imprisoning authority, the goal of fairness to the defendant would be served at the expense of society's expectation that a prisoner will serve the time he owes.

That said, the question in this case is not so easy as asking whether New York made a mistake. Whether the imprisoning sovereign has clean hands is a factual inquiry that looks not just to which sovereign made the more serious error. Rather, the court reviewing a petitioner's habeas petition must consider if the imprisoning sovereign was partially at fault. This inquiry is a factual one best conducted before a District Court. In the case before us, factual inquiries remain regarding the degree of fault, if any, of the United States. Therefore, we will remand the case so that the District Court can consider in the first instance whether the United States was negligent, taking into consideration the detainer and the Government's admission that it never received notice that the detainer had been received. In addition, this case presents unique circumstances that involve a very close working relationship between federal and state authorities. Therefore, on remand the District Court should consider in the first instance the legal issue of whether, under these particular facts, the State of New York was acting as an agent of the federal government.

2.

In addition to proving that the imprisoning sovereign was free from negligence, the government may defeat a habeas

23

petition by showing that the prisoner affirmatively effectuated his release or continued freedom. All courts agree that if a prisoner has actively effectuated his release, for example by escaping, or actively thwarted governmental attempts to recover him, he may not receive credit for time at liberty. *See*, *e.g.*, *White*, 42 F.2d at 789 ("Nor can there be any doubt that an escaped prisoner cannot be credited with the time he is at large."). Therefore, a prisoner who escapes or, after release, actively engages in conduct to thwart governmental attempts to find and re-incarcerate him, should not be able to accept the benefits of his misbehavior. In such cases, there is no unfairness to the defendant when the government requires him to serve the full sentence he owes. *Id.* Therefore, we agree with our sister circuits and require that a prisoner must come to the service of his sentence with clean hands before he may receive credit for time at liberty.

The government cannot meet its burden under this prong merely by showing that a prisoner did not take affirmative steps to effectuate his own sentence. If a prisoner suspects that he may have another sentence to serve and does nothing to notify authorities, he may still receive credit against his sentence so long as his conduct has not violated his parole or thwarted authorities in any other manner. This holding comports with other courts' decisions that have refused to require a prisoner to bring the mistaken release to the attention of either the releasing or imprisoning sovereign. *See*, *e.g.*, *Green*, 732 F.2d at 1400 (granting credit despite prisoner's knowledge that he owed time on another sentence). In this case, there is no suggestion that Vega effectuated his own release, such as by escaping. However, we lack specific findings from the District Court

24

regarding Vega's behavior following his release from prison. Therefore, we must remand so that the District Court may consider in the first instance whether Vega engaged in illicit behavior in order to thwart governmental attempts to reincarcerate him.

V.

Although there is not a constitutionally-based right to credit for time at liberty as a result of mistaken release, we decline to adopt a rule that would unduly penalize releasees who have readjusted to life outside of confinement or unduly penalize the government when it has had no hand in a prisoner's erroneous release. When evaluating which releasees should receive credit for their premature freedom, district courts are to apply the two-part test articulated here. A prisoner is to receive credit for the time he was at liberty if he can bring forth facts indicating that he was released despite having unserved time remaining. The government may then respond to the petition by showing that, either, the imprisoning sovereign was not negligent, or vicariously negligent, or that the prisoner, in any way, affirmatively effectuated his release or prevented his re-apprehension. We therefore vacate the District Court's order in part and remand for the District Court to consider whether the Government has made such a showing.[6] Vega will not,

_____

[6]It appears that if Vega's position is upheld on remand, he will have served or will be close to having served his sentence in full. Accordingly, on remand the District Court is instructed to forthwith and without delay hold a bail hearing on

25

however, receive credit toward his federal narcotics sentence for the period between August 27, 1998 and July 30, 1999, because this time was credited against his state parole violation. Accordingly, we will affirm the District Court's judgment with respect to the August 27, 1998-July 30, 1999 period.

---

an expedited basis.