Kevin Paul WOODRUFF, Appellant

v.

Troy WILLIAMSON.

No. 09–1864.

United States Court of Appeals,
Third Circuit.

Submitted for Possible Dismissal
Pursuant to 28 U.S.C. § 1915(e)(2)(B) or
Summary Action

Pursuant to Third Circuit LAR 27.4 and
I.O.P. 10.6 Nov. 25, 2009.

Filed: Jan. 27, 2010.

Kevin Paul Woodruff, Inez, KY, pro se.

Michael J. Butler, Esq., Dennis C. Pfannenschmidt, Esq., Office of United States Attorney, Harrisburg, PA, for Troy Williamson.

Before: McKEE, RENDELL and CHAGARES, Circuit Judges.

OPINION

PER CURIAM.

Kevin Paul Woodruff appeals *pro se* from the District Court's order denying his petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2241. Because the appeal presents no substantial question, we will summarily affirm.

I.

Woodruff is a federal prisoner serving a 235–month sentence. In September 2005, while he was incarcerated at USP–Victorville, Woodruff received an incident report charging him with possession of a weapon and refusing an order. Woodruff requested that a videotape of the events be shown at his disciplinary hearing, but the Disciplinary Hearing Officer ("DHO") denied the request, stating that the tape did "not focus on" Woodruff. The DHO found Woodruff guilty of possession of a weapon and assessed him a forty-day loss of good time credit, among other sanctions. In May 2006, while incarcerated at USP–Lewisburg, Woodruff received an incident report for refusing to provide a urine sample. At his hearing, Woodruff testified that he had already provided a sample for the month. He stated that he had questioned the officer about the type of sample he was being ordered to give, asked to speak with the Lieutenant, and stated that he was not refusing the order. The DHO found Woodruff guilty of interfering with staff, most like refusing to provide a urine sample, and assessed him forty-one days loss of good time credit.

Woodruff exhausted his administrative remedies and then filed the § 2241 habeas petition at issue here. He challenges the loss of good time credits as a result of both disciplinary findings, and claims that he was denied due process at both hearings. He also claims that he was transferred to the Special Management Unit in retaliation for filing administrative grievances and for racially motivated reasons, and that he was denied appropriate medical care. Finally, Woodruff asserts that the Bureau of Prisons has miscalculated his sentence by disallowing vested good time credits and by denying him prior custody credit. The District Court denied the petition by memorandum and order entered on March 12, 2009, 2009 WL 703200. On September 11, 2009, 2009 WL 2997005, the District Court denied Woodruff's timely motion for reconsideration.

II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 28 U.S.C. 2253(a). A certificate of appealability is not required to appeal from the denial of this § 2241 petition. *See Burkey v. Marberry,* 556 F.3d 142, 146 (3d Cir. 2009). We exercise plenary review over the District Court's legal conclusions, and review its factual findings for clear error. *See Vega v. United States,* 493 F.3d 310, 314 (3d Cir.2007).

III.

Each of Woodruff's claims lack merit, substantially for the reasons explained by the District Court.

A. *Disciplinary Violations*

Federal prisoners have a liberty interest in statutory good time credits. *See Vega,* 493 F.3d at 317 n. 4 (citing *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct.

2963, 41 L.Ed.2d 935 (1974), and 18 U.S.C. § 3624(b)(1)). Thus, "[w]here a prison disciplinary hearing may result in the loss of good time credits, ... the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity ... to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (citing *Wolff,* 418 U.S. at 563–67, 94 S.Ct. 2963). In addition, the disciplinary decision must be supported by "some evidence," meaning, "any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56, 105 S.Ct. 2768.

The District Court correctly found that Woodruff received written notice more than twenty-four hours prior to each hearing, received a copy of the incident reports, and initially appeared before the Unit Disciplinary Committee at each prison. In each case, he attended the hearing and had the opportunity to call witnesses, present evidence, and have a staff representative's assistance. In each case, the DHO prepared a written record, documented his findings, and explained the sanctions imposed.

■ Woodruff argues that he was denied the opportunity to view and present an allegedly exculpatory videotape at the first disciplinary hearing at USP–Victorville. The DHO expressly addressed Woodruff's request regarding the videotape, stating that the tape did not focus on him. The DHO considered that an eyewitness officer reported that he observed Woodruff with a weapon in his hand, saw him hand it to another inmate who disposed of it, and then found two weapons in the area of similar size and description as the one alleged to have been in Woodruff's

possession. Woodruff also admitted that he had approached the area of the altercation with the intent to break it up. As such, the District Court correctly determined that there was "some evidence" to support the DHO's finding that Woodruff was in possession of a weapon.

■ As to the incident at USP–Lewisburg, Woodruff told the correctional officer who ordered him to prove a urine sample that he had already given a monthly sample, and he requested that the Lieutenant be called to clarify the situation. Woodruff claims that his request did not constitute a refusal to provide a specimen. The DHO investigated Woodruff's argument, and found that he had not provided a sample for the month. The DHO concluded that when Woodruff refused to provide a specimen until he spoke with the Lieutenant, he interfered with the correctional officer as he attempted to perform his duties. Accordingly, the District Court properly determined that there was "some evidence" that Woodruff attempted to interfere with staff, most like refusing to provide a urine sample.

B. *Special Management Unit Confinement*

■ Woodruff claims that he was placed in the Special Management Unit in retaliation for filing administrative grievances and for racially motivated reasons. He further claims that he was denied adequate medical care for asthma while housed in the unit. We agree with the District Court that these claims are challenges to the conditions of Woodruff's confinement, rather than a challenge to the validity of his conviction or the length of his sentence. *See Leamer v. Fauver,* 288 F.3d 532, 540 (3d Cir.2002) (habeas relief is the appropriate remedy "where the deprivation of rights is such that it necessarily impacts the fact or length of detention").

We thus agree that these claims would be appropriately brought in an action under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and that they are not cognizable in a habeas petition. *See Leamer,* 288 F.3d at 542–44.

### C. Computation of Sentence

Woodruff claims that the Bureau of Prisons ("BOP") miscalculated his sentence by denying him prior custody credit for time served in California state custody following a state parole revocation. He also argues that the BOP improperly disallowed good time credit following two disciplinary incidents in 1998, which occurred while he was in federal custody, but prior to sentencing. Finally, he contends that his good time credits earned prior to 2005 were "vested" and irrevocable. He asserts that a proper calculation of his sentence would result in his immediate release, and he seeks monetary damages.

█ When Woodruff was sentenced on July 14, 1998, the sentencing court directed that he was not to receive credit for time in state custody on a parole hold. He received credit for the period that began when his sentence for a California state parole violation ended and ended when he was sentenced for his federal conviction. The District Court correctly rejected Woodruff's claim relating to prior custody credit. Pursuant to 18 U.S.C. § 3585(b), Woodruff is not entitled to credit for time spent in state custody prior to his federal sentence that was credited to his state sentence. *See Vega,* 493 F.3d at 314 (time credited against a state parole violation sentence is not properly credited toward a federal sentence).

Woodruff next claims that he is entitled to credit restoration because he was sentenced under the Sentencing Reform Act ("SRA"). The District Court found that Woodruff's offense was committed while the SRA was in effect. Under the SRA, Woodruff is eligible to receive fifty-four days of good time credit per year, awarded at the end of each year on his "anniversary date." *See* 18 U.S.C. § 3624(b) (1991). The BOP has fifteen days from the anniversary date to subtract good time credits as the result of disciplinary proceedings and award the remainder days, which then vest. *Id.* Once good time credits have vested, they may be withdrawn only under very limited circumstances. *Id.* The District Court examined each disciplinary incident for which the BOP disallowed Woodruff good time credits, and correctly determined that in each case, the good time credits were denied in the appropriate year and no vested credits were disallowed. In Woodruff's July 2005 to July 2006 term, the BOP imposed eighty-one days of good time credit loss as the result of disciplinary violations, but disallowed only the maximum fifty-four days at the end of that term. Accordingly, the District Court properly concluded that Woodruff is not entitled to any credit restoration.

### IV.

For the foregoing reasons, we conclude that the appeal presents no substantial question. Accordingly, we will summarily affirm the District Court's judgment. *See* 3d Cir. L.A.R. 27.4; 3d Cir. I.O.P. 10.6.