CLD-279 NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1839
_____

JAMES W. LANG,
Appellant

v.

WARDEN DELBERT SAUERS
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 3:12-cv-02433)
District Judge: Honorable Robert D. Mariani
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
June 13, 2013

Before: RENDELL, JORDAN and SHWARTZ, <u>Circuit</u> <u>Judges</u>

(Opinion filed: June 28, 2013)
_____

OPINION
_____

PER CURIAM

James Lang, a federal inmate proceeding pro se, appeals from the District Court's

denial of his habeas corpus petition pursuant to 28 U.S.C. § 2241. Because this appeal

does not present a substantial question, we will summarily affirm the District Court's

judgment.

1

I.

On June 24, 2009, at FCI Elkton, an officer recovered a 4 ½ inch sharpened weapon after noticing that the pockets of Lang's winter coat had been altered. That same day, Lang was cited for violations of Code 104 (possession of a weapon), and Code 329 (destroying, altering, or damaging government property having a value of $100 or less). Lang received a copy of the incident report on June 25, 2009. On July 7, 2009, a Disciplinary Hearing Officer ("DHO") conducted a hearing and determined that Lang had committed the prohibited acts as described in the incident report. He sanctioned Lang for the Code 104 violation by imposing 60 days of disciplinary segregation and disallowing 30 days of good conduct time and 180 days of visitation privileges. He also imposed 15 days of disciplinary segregation and restitution in the amount of $58.00 to replace the altered coat for the Code 329 violation.

Approximately two years later, on September 15, 2011, Lang was asked to provide a urine sample for random drug testing. Lang failed to provide a sample after being given two hours and 15 minutes in which to do so. That same day, Lang was cited for a violation of Code 110 (refusing to provide a urine sample or participate in drug testing). He received a copy of the incident report the following day. During initial proceedings, Lang admitted that the incident report was true but that he was unable to provide a sample because of kidney problems that occasionally impeded his ability to provide such samples and because he had used the bathroom just prior to being notified of the test. On September 24, 2011, a DHO conducted a final hearing and determined that Lang had committed the prohibited act. He imposed 360 days of disciplinary segregation and a

2

fine of $500.00 and disallowed 40 days of good conduct time and a year of visitation and telephone privileges.

Lang filed a § 2241 petition, alleging that he was denied due process of law in his disciplinary hearings and was subjected to cruel and unusual punishment during his time in administrative segregation. As relief, he sought, inter alia, restoration of his good time credits. The District Court denied Lang's petition, and this timely appeal followed.

## II.

We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a),[1] and exercise plenary review over the denial of Lang's § 2241 petition. See Vega v. United States, 493 F.3d 310, 314 (3d Cir. 2007). Section 2241 is the appropriate vehicle for constitutional claims when a prison disciplinary proceeding results in the loss of good time credits. Queen v. Miner, 530 F.3d 253, 254 n.2 (3d Cir. 2008) (per curiam). We may summarily affirm on any basis supported by the record. Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

## III.

Federal prisoners have a liberty interest in statutory good time credits. Wolff v. McDonnell, 418 U.S. 539, 557 (1974); see also 18 U.S.C. § 3624(b)(1); Vega, 493 F.3d at 317 n.4. Thus, when a disciplinary hearing may result in the loss of these credits, an inmate must receive: (1) written notice of the charges at least 24 hours prior to a hearing; (2) an opportunity to call witnesses and present evidence in his defense; (3) an

---

[1] A certificate of appealability is not required to appeal the denial of a § 2241 petition. See Burkey v. Marberry, 556 F.3d 142, 146 (3d Cir. 2009).

3

opportunity to receive assistance from an inmate representative; and (4) a written statement of the evidence relied on and the reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. 539, 563-71 (1974). "[R]evocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454 (1985) (internal quotation marks and citation omitted). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or a weighing of the evidence. See Thompson v. Owens, 889 F.2d 500, 502 (3d Cir. 1989). Rather, the relevant inquiry asks whether "there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56.

Upon our review of the record, we agree with the District Court that Lang received due process during his two disciplinary hearings as required by Wolff and Hill. With regards to the urine sample incident, Lang alleges that officers violated 28 C.F.R. § 541.5(a), which states that a prisoner is to "ordinarily receive the incident report within 24 hours of staff becoming aware of [his] involvement in the incident." However, the incident occurred on September 15, 2011, and the DHO's report indicates that Lang received notice of the charge on September 16, 2011. Although Lang asserts that he did not receive notice until September 19, 2011, the record is devoid of any evidence to corroborate his allegation. Even if this regulation was violated, Lang cannot show that his right to due process was violated at either hearing, especially where Wolff does not require issuance of the charge within 24 hours of the incident. Wolff only requires that

4

an inmate receive written notice of the charges 24 hours before a hearing. Here, Lang was provided adequate and proper notice of both incidents well before his hearings.

Furthermore, Lang's hearings complied with the other standards set forth by Wolff. Wolff requires that inmates be afforded the opportunity to call witnesses and present documentary evidence during the disciplinary hearing, as well as the opportunity to receive assistance from inmate representatives. Wolff, 418 U.S. at 566-71. The record shows that Lang was informed of his rights at both hearings. He declined staff representation and indicated that he did not wish to present any witnesses or documentary evidence at his first hearing. At his hearing for failing to provide a sample, Lang elected to have Unit Manager Burns serve as his representative and presented a memorandum from Health Services as evidence; however, he again indicated that he did not wish to present any witnesses. Wolff also requires that inmates receive written decisions explaining the DHO's conclusions. Id. at 564-65. The DHO provided copies of both reports to Lang. Accordingly, all of the Wolff standards were met.

Lang also challenges the sufficiency of the evidence at the hearings and alleges that officers contrived false charges against him. However, the record indicates that the DHO relied on the reporting officer's statement, a clothing cost list showing the value of the winter coat, the form signed by Lang issuing him the winter coat, and a photograph of the recovered weapon to find Lang guilty of possessing a weapon and altering government property. The record further indicates that the DHO relied on the reporting officer's statement, a phone interview with Registered Nurse Owen, and memoranda from Health Services to find Lang guilty of failing to provide a urine sample.

5

Accordingly, the DHO's findings and decisions to deny Lang's good conduct credits are supported by "some evidence," in satisfaction of Wolff and Hill.

Lang further alleges that he experienced cruel and unusual punishment during his confinement in administration segregation. A prisoner may challenge the execution of his sentence through a § 2241 petition. See Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 243 (3d Cir. 2005). However, "although a § 2241 attack on the execution of a sentence may challenge some matters that occur at prison, such as a deprivation of good-time credits and other prison disciplinary matters . . ., this does not make § 2241 actions like 'conditions of confinement' lawsuits, which are brought under civil rights laws." McIntosh v. U.S. Parole Comm'n, 115 F.3d 809, 811-12 (10th Cir. 1997) (internal citation omitted); see also Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). Here, Lang is seeking to have his sentence reduced by 500 days based on the cruel and unusual conditions to which he was allegedly subjected in the past. The proper avenue of relief for Lang's claims regarding his conditions of confinement is a suit pursuant to Bivens v. Six Unknown Named Agents of the Fed. Bur. of Narcotics, 403 U.S. 388 (1971), and so we affirm the District Court's dismissal of Lang's claims without prejudice to Lang's ability to file a Bivens action raising these claims. We express no opinion in Lang's likelihood of prevailing under Bivens.

IV.

For the foregoing reasons, no substantial question is presented and we will affirm the District Court's judgment. See 3d Cir. L.A.R. 27.4; I.O.P. 10.6. We also affirm the

6

dismissal of Lang's claims regarding his conditions of confinement without prejudice to his ability to file a <u>Bivens</u> action.