**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2405
_____

JOHN POWERS,
Appellant

v.

WARDEN ALLENWOOD USP
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4-19-cv-00990)
District Judge:  Honorable Matthew W. Brann
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 9, 2022
_____

Before:  CHAGARES, Chief Judge, JORDAN and SCIRICA, Circuit Judges

(Opinion filed: December 15, 2022)
_____

OPINION[*]
_____

---

[*]     This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

**CHAGARES**, Chief Judge.

John Powers filed a petition seeking a writ of habeas corpus, claiming that the Bureau of Prisons ("BOP") violated the Constitution by revoking his good conduct time credit following behavior he claims was a result of his mental illness. The District Court denied Powers's petition, rejecting his claims under the Fifth and Eighth Amendments. For the reasons explained below, we will affirm the order of the District Court.

I.

We write solely for the parties and so recite only the facts necessary to our disposition. Powers, who was incarcerated for over 30 years, has a long history of mental health problems, including incidents of self-harm and placements on suicide watch.

Powers was twice disciplined by the BOP at the end of 2018. Powers pressed a duress alarm on one occasion. After a corrections officer informed him that he should only press the alarm in a medical emergency, Powers pressed the alarm again and used foul language with the officer. Powers claims he activated the alarm because he "began to have suicidal ideations and urges to engage in self-harm" and wanted to see a psychologist. Appendix ("App.") 28. In the second incident, Powers harmed himself by lacerating his scrotum.

The BOP prepared an incident report and a psychology services institution disciplinary process report for each of the incidents. After the BOP held disciplinary hearings, it upheld the charges of insolence towards staff (the first incident) and tattooing or self-mutilation (the second incident). Powers lost a total of 42 days of good conduct time credit — 15 days as a result of the first incident and 27 days as a result of the second

2

incident.

Powers filed his habeas corpus petition pro se, framing the issue as whether, under the Fifth Amendment due process clause, he could be deprived of good conduct time credits for behavior that constitutes a symptom of mental illness. The District Court denied his petition, holding that Powers's due process rights were not violated because (1) he was provided with "all the due process safeguards" identified in Wolff v. McDonnell, 418 U.S. 539, 563–71 (1974), see App. 9; (2) the "disciplinary decisions were supported by 'some evidence,'" which is all that is required under Superintendent v. Hill, 472 U.S. 445, 457 (1985), see id. at 9, 10; and (3) to the extent Powers argued he was not competent or responsible, BOP "reasonably relied upon the professional opinion of a psychologist" in concluding otherwise, see id. at 11.

Powers timely appealed. A motions panel denied the Government's request for summary affirmance, appointed Powers counsel,[1] and informed the parties that they "shall address whether Appellee violated the Fifth or Eighth Amendments by sanctioning Appellant with the loss of good-conduct time for self-harming behavior that Appellant claims is a symptom of mental illness." See Order, Dkt. 14 (citing pertinent Eighth Amendment caselaw).

While his appeal was pending, Powers was released from prison. The Government then moved to dismiss the appeal as moot. The Court referred that motion to the motions panel, which referred it to this merits panel for a decision.

---

[1] We thank counsel for agreeing to take this case pro bono and commend counsel and his students for their excellent briefing.

3

II.

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 2241, and we have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253. We review the denial of habeas corpus relief de novo, exercising plenary review over the District Court's legal conclusions and applying a clearly erroneous standard to its findings of fact. Vega v. United States, 493 F.3d 310, 314 (3d Cir. 2007).

III.

Powers's habeas petition is not moot, even though Powers was released while his appeal was pending. Article III limits the federal courts to adjudicate "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. At every stage in litigation, we must determine whether the case-or-controversy requirement is met to ensure that we only decide issues within the bounds of the Constitution and do not give "opinions advising what the law would be upon a hypothetical state of facts." Chafin v. Chafin, 568 U.S. 165, 172 (2013) (citation omitted). When a case becomes moot, the case-or-controversy requirement is no longer met. A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Chafin, 568 U.S. at 172 (citation omitted). Incarceration, an obvious concrete injury, satisfies the case or controversy requirement. But once an incarcerated individual has been released, he or she must face a collateral consequence for the requirement to be met. Spencer v. Kemna, 523 U.S. 1, 7 (1998).

Powers argues that any ruling in his favor on his habeas petition involves holding that the good conduct time credits at issue should not have been revoked and he should

4

have been released from prison earlier. He further argues that as a result of such a ruling, the sentencing court could use its discretion to modify his term of supervised release under 18 U.S.C. § 3583(e) to account for the excessive time he served in prison. Powers reasons that the possibility of obtaining that relief constitutes a collateral consequence sufficient to preserve a live case or controversy.[2] We agree.

The Government relies upon Burkey v. Marberry, 556 F.3d 142 (3d Cir. 2009) to argue that a potential modification to a term of supervised release is insufficient to maintain a live case or controversy. In that decision, we held that the petitioner's habeas petition was moot because he had been released from prison and he could not show that it was "likely" that the sentencing court would reduce his term of supervised release were he to prevail on his habeas petition. Burkey, 556 F.3d at 149–50. But as we noted in United States v. Scripps, that holding was likely "superseded by more recent Supreme Court case law," which has since clarified that a case "is not moot if there is *any* theoretical avenue of relief." 961 F.3d 626, 631 n.3 (3d Cir. 2020) (citing Mission Prod. Holdings, Inc. v. Tempnology, LLC, 139 S. Ct. 1652, 1660 (2019)). In other words, "a case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party," and as "long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." Chafin, 568 U.S. at 172 (citation omitted).

---

[2] Powers also argues that our caselaw requiring him to prevail in habeas as a prerequisite to filing a damages action is a collateral consequence that prevents his case from being moot. Because we hold that Powers's case is not moot for a separate reason, we decline to consider that argument.

Here, were the District Court to grant Powers's habeas petition and hold that the BOP should not have revoked his good conduct time credits, there is a possibility that the sentencing court would reduce the term of supervised release to compensate him for his excessive incarceration. That is enough to preserve a live case or controversy.

Accordingly, the Government's motion to dismiss the appeal as moot will be denied.

IV.

The District Court held that the BOP did not violate Powers's procedural due process rights under the Fifth Amendment when it revoked his good conduct time credits. We agree.

Federal prisoners have a liberty interest in good conduct time credits. Wolff, 418 U.S. at 557–58. Due process protections are therefore required "[w]here a prison disciplinary hearing may result in the loss of good time credits." Hill, 472 U.S at 454 (citing Wolff, 418 U.S. at 563–67). Before good conduct time credits may be revoked, due process entitles an inmate to: (1) not less than 24 hours written notice of the charges against him; (2) an appearance before an impartial decision-making body; (3) an opportunity "to call witnesses and present documentary evidence;" (4) the option to be assisted by a fellow inmate or a staff member; and (5) a "written statement" explaining the decision-maker's conclusions. Wolff, 418 U.S. at 563–71. Additionally, the Supreme Court has held that "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." Hill, 472 U.S. at 454

6

(quotation marks and citation omitted).

Powers does not appear to contest the District Court's holding that his procedural due process rights were protected by the BOP.[3] And upon review of the record, we agree with the District Court that Powers received the process he was due during the disciplinary proceedings. For each incident, he had more than 24 hours of notice of the charges against him, he participated in the disciplinary hearings, he was given the opportunity to call witnesses and to have assistance from an inmate or staff member (he declined both times), and he received written decisions explaining the conclusions of the officer. Further, there was "some evidence" to support the disciplinary hearing officers' decisions, see Hill, 472 U.S. at 454, including the incident report and the statements of the corrections officers involved.

Accordingly, we will affirm the District Court's order holding that Powers's procedural due process rights were not violated.

V.

Powers's principal argument on appeal is that his loss of good conduct time credits constituted a punishment for his mental illness (or symptoms thereof), in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. We disagree. In Robinson v. California, the Supreme Court held that a California statute making it a criminal offense for a person "to be addicted to the use of narcotics" violated the Eighth

---

[3] On appeal, Powers focuses on alleged violations of his Eighth Amendment rights, noting that were his claims to be framed in Fifth Amendment terms, the violations would be of substantive — not procedural — due process.

Amendment, because unlike laws "punish[ing] a person for the use of narcotics [or] for their purchase, sale or possession," statutes punishing a "status" without punishing conduct violate the Eighth Amendment. 370 U.S. 660, 666 (1962). Here, Powers was not punished for his "status" as a mentally ill inmate; he was punished for violating prison regulations that apply to all inmates and prohibit certain conduct. Nothing in Robinson requires a further inquiry.

Powers argues that "punishing someone for the symptoms of an illness or addiction is no different from punishing the illness or addiction itself," and so punishment for acts that are not volitional violates the Eighth Amendment. Powers Br. 13 (citing Powell v. Texas, 392 U.S. 514, 548 (1968) (White, J., concurring)). We have rejected just that argument in the past, see United States ex rel. Mudry v. Rundle, 429 F.2d 1316, 1316 (3d Cir. 1970), and we continue to do so today.

The insanity defense in criminal cases provides a useful analogy. Many jurisdictions, including the federal government, limit the insanity defense to defendants who "as a result of a severe mental disease or defect, [were] unable to appreciate the nature and quality or the wrongfulness of [their] acts." See 18 U.S.C. § 17.[4] But that is not the only configuration of the defense. A few states include a "volitional incapacity or irresistible-impulse test, which . . . asks whether a person was so lacking in volition due to a mental defect or illness that he could not have controlled his actions." Clark v.

---

[4] The Bureau of Prisons similarly proscribes the punishment of prisoners, who "as the result of a severe mental disease or defect, . . . were unable to appreciate the nature and quality, or wrongfulness of the act." 28 C.F.R. § 541.6(b).

Arizona, 548 U.S. 735, 749 (2006). The Supreme Court has repeatedly rejected the notion that the Constitution requires any one formulation of the insanity defense, including the "irresistible impulse" test advocated by Powers and adopted by some states. See Kahler v. Kansas, 140 S. Ct. 1021, 1027–37 (2020); Clark, 548 U.S. at 747–56; Leland v. Oregon, 343 U.S. 790, 800–01 (1952). Although those three decisions considered substantive due process challenges, Kahler heavily relied on the Supreme Court's plurality decision in Powell v. Texas, which considered the Eighth Amendment, when holding "that '[n]othing could be less fruitful' than to define a specific 'insanity test in constitutional terms.'" Kahler, 140 S. Ct. at 1028 (2020) (quoting Powell, 392 U.S. at 536); see also id. at 1028–29, 1037 (discussing Powell at length). Like in the insanity defense context, nothing in the Constitution requires the BOP to consider whether Powers's conduct was voluntary before imposing punishment. The District Court, accordingly, did not err when it did not separately assess whether Powers's conduct was volitional.

The only arguable basis under the Eighth Amendment to challenge the prison discipline incurred by Powers is that the imposed punishment was grossly disproportional to the severity of the offense. Ingraham v. Wright, 430 U.S. 651, 667 (1977). We agree with the District Court that the Eighth Amendment was not violated because the punishments were within the range of sanctions available under the regulations.[5]

Accordingly, we will affirm the District Court's order holding that Powers's

---

[5] Powers does not contest that holding on appeal.

9

Eighth Amendment rights were not violated.

## VI.

For the foregoing reasons, we will deny the Government's motion to dismiss the appeal as moot and we will affirm the order of the District Court.