NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-3162

_____

HITHAM ABUHOURAN,

Appellant,

v.

WARDEN J. GRONDOLSKY

_____

No. 09-3244

_____

AKTHAM ABUHOURAN,

Appellant,

v.

CHRISTOPHER MELLONEY

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Nos. 08-cv-4379, 08-cv-4838)
District Judge:  Hon. Dickinson R. Debevoise

_____

Submitted Under Third Circuit L.A.R. 34.1(a),
July 16, 2010

Before: FUENTES and VANASKIE, *Circuit Judges*
and DITTER,* *District Judge*.

(Opinion Filed: August 25, 2010)

---

OPINION OF THE COURT

---

FUENTES, *Circuit Judge*:

Based on their involvement in a scheme to fraudulently obtain over $9 million in loans from the Bank of the Brandywine Valley, Hitham Abuhouran and Aktham Abuhouran were convicted of numerous charges including bank fraud and money laundering. Following the Supreme Court's decision in *United States v. Santos*, 553 U.S. 507, 128 S. Ct. 2020 (2008), they sought permission to file successive motions pursuant to 28 U.S.C. § 2255 to challenge their convictions for money laundering. We denied the request but concluded that, as they claimed that they were being detained for conduct that had subsequently been rendered non-criminal by an intervening Supreme Court decision, they could file habeas petitions pursuant to 28 U.S.C. § 2241. *See In re Dorsainvil*, 119 F.3d 245, 252 (3d Cir. 1997).

---

* Honorable J. William Ditter, Senior District Court Judge for the Eastern District of Pennsylvania, sitting by designation.

In their § 2241 petitions, they argued that under the interpretation of the federal money laundering statute set forth in *Santos*, they were improperly convicted of money laundering. Specifically, they relied on *Santos* for the proposition that transactions that merely pay expenses of an unlawful activity do not constitute "proceeds" of that activity and thus do not meet the definition of money laundering. They contended that the payments charged as money laundering in their case were expenses of the bank frauds and not profits from the bank frauds and, therefore, not money laundering. The District Court rejected this argument, holding that the payments at issue were profits and a proper basis for the money laundering charges. For the reasons stated below, we will affirm.[1]

## I.

Because we write primarily for the parties, we only discuss the facts and proceedings to the extent necessary for the resolution of the case.

In 1995, Hitham Abuhouran ("Steve Houran") and Aktham Abuhouran ("Tony Houran") were named in a 57-count Indictment alleging a scheme to fraudulently obtain over $9 million in loans from the Bank of the Brandywine Valley ("BBV"). This amount exceeded BBV's capital, and the bank collapsed. The charges against Defendants included bank fraud, in violation of 18 U.S.C. § 1344, and "promotion" money

---

[1] The District Court had jurisdiction under 28 U.S.C. § 2241. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1291, 2253. We exercise plenary review over a district court's denial of habeas corpus relief. *Vega v. United States*, 493 F.3d 310, 314 (3d Cir. 2007). We review the district court's factual findings for clear error. *Id.*

-3-

laundering, in violation of § 18 U.S.C. § 1956(a)(1)(A)(i). Steve Houran was charged with fifteen counts of bank fraud and four counts of money laundering; Tony Houran was charged with four counts of bank fraud and one count of money laundering.

Each of the counts of money laundering corresponded to a count of bank fraud. Specifically, each money laundering count concerned a single check that allegedly used the proceeds of a bank fraud scheme to promote that scheme. For example, Count 16 charged Defendants with obtaining a $350,000 line of credit from BBV for the use of Houran Plaza Associates by misrepresenting the purpose of the loan. It alleged that Defendants stated that the funds would be used to refurbish a building owned by Houran Plaza Associates when the building had already been refurbished and the funds were actually to be used for Defendants' personal needs and for their business, Houran Construction Company. After obtaining the funds, Defendants and their brother, Adham Abuhouran ("Adam Houran"), engaged in a series of transactions; in one, Adam Houran wrote a check for $50,000, payable to Houran Construction Company. This transaction was charged as money laundering in Count 18.

Steve Houran pleaded guilty to all charges against him and was sentenced to 188 months' imprisonment, five years of supervised release, and restitution in the amount of $6,917,246. Tony Houran proceeded to trial and was convicted of all charges against him save one count of perjury and one count of interstate transportation of stolen property. He was sentenced to 109 months' imprisonment, five years of supervised release, and

restitution in the amount of $1,860,477.

In 2001, Defendants were named in a new indictment that charged them with additional frauds. In part, the 2001 indictment alleged that Defendants engaged in a scheme to defraud six United States banks of $2.5 million through the use of counterfeit checks, to have that money wired to Jordan, and to flee the United States. One of the six banks, PNC Bank, wired $185,000 to an account in Tony Houran's name in Jordan. Steve Houran pled guilty to conspiracy and was sentenced to 60 months' imprisonment, with 24 months to run consecutively to his earlier sentence. At present, his projected release date is September 13, 2012.

Tony Houran likewise pled guilty to conspiracy and was initially sentenced to 60 months' imprisonment, with 24 months to run consecutively. In exchange for the Government's recommendation of a 24-month sentence, Tony Houran agreed to cooperate in the return of the $185,000 to PNC Bank. By the time of sentencing, the funds had not yet been returned, and the Government recommended that 42 months of the 60-month sentence be served consecutively. The District Court imposed the recommended sentence. Thereafter, PNC Bank retrieved the funds, and the Government filed a motion pursuant to Federal Rule of Criminal Procedure 35 requesting that the sentence be reduced so that only 24 months would run consecutively. The District Court granted the motion. Tony Houran has served the entirety of this term of imprisonment but remains on supervised release.

In 2008, the Supreme Court decided *Santos* in a divided opinion. At issue in the case was the meaning of the word "proceeds" as it is used in the federal money laundering statute, 18 U.S.C. § 1956(a)(1)(A)(i). The conduct charged as money laundering was payments by the operator of an illegal lottery to his winners and runners out of the receipts from the lottery. Applying the rule of lenity, a four-Justice plurality concluded that the term "proceeds" in the money laundering statute meant profits and not, as the Government argued, receipts. 128 S. Ct. at 2025. Adopting the Government's interpretation would, in the words of the plurality, create a "merger problem." *Id.* at 2026. "If 'proceeds' meant 'receipts,' nearly every violation of the illegal-lottery statute would also be a violation of the money-laundering statute, because paying a winning bettor is a transaction involving receipts that the defendant intends to promote the carrying on of the lottery." *Id.* Justice Stevens wrote an opinion concurring in the judgment. In his view, the word "proceeds" in the money laundering statute could take on different meanings depending on the specified unlawful activity at issue. *Id.* at 2031. With respect to illegal gambling, the legislative history was silent on the appropriate meaning of "proceeds," and the consequences of applying a "gross receipts" definition would be "perverse." *Id.* at 2032. Thus, Justice Stevens agreed that "proceeds" must mean "profits" in the context of illegal gambling. *Id.* at 2033–34. The plurality and Justice Stevens disagreed, however, about how to reconcile the two opinions to determine

-6-

the ultimate holding of the Court.[2]

In light of *Santos*, Steve Houran asked permission to file a successive motion pursuant to 28 U.S.C. § 2255 to challenge his 1995 conviction for money laundering. We denied this request on the basis that *Santos* did not set forth a new rule of constitutional law applicable to cases on collateral review. The Government acknowledged, however, that under *In re Dorsainvil*, the Hourans could present petitions pursuant to 28 U.S.C. § 2241 in the district in which they were confined, the District of New Jersey. Following a hearing, the District Court dismissed both petitions with prejudice, holding that the Hourans do not benefit from *Santos*.

## II.

On appeal, the Hourans make the following arguments: (1) the transactions charged as money laundering were expenses of the bank frauds and not profits, and thus under *Santos*, they are actually innocent of money laundering; and (2) the District Court erred in concluding that the transactions were not necessary to promote the commission of the bank frauds and that, therefore, there was no "merger problem."

---

[2] After the decision in *Santos*, Congress amended the money laundering statute to define "proceeds" as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the *gross receipts* of such activity." Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 2(f)(1), 123 Stat. 1617, 1618 (codified as amended at 18 U.S.C. § 1956(c)(9)) (emphasis added). Thus, *Santos* is inapplicable to any case charged under the new version of the statute. All parties in the instant cases concede, however, that the cases must be decided based on the prior version of the statute, as interpreted by *Santos*.

In an extensive written opinion, the District Court carefully and thoroughly considered the contentions that the Hourans raise in this appeal. After a complete review of the record and the parties' arguments, we find no basis for disturbing the District Court's ruling. Therefore, we will affirm the District Court's dismissal of the Hourans' habeas petitions substantially for the reasons set forth by the District Court in its written opinion. *See Abuhouran v. Grondolsky*, 643 F. Supp. 2d 654 (D.N.J. 2009).

We add only the following: The crux of the Hourans' argument on appeal is that the transactions charged as money laundering actually constituted expenses of the bank frauds, not profits from the bank frauds. They fail to identify, however, exactly what expenses they were paying. A comparison with the facts of *Santos* emphasizes the deficiencies in the Hourans' argument. In *Santos*, the transactions charged as money laundering were specifically identified as payments to the individuals who helped run the illegal lottery and payments to lottery winners. 128 S. Ct. at 2022–23. Knowing exactly what the payments were used for, the Court could determine that they "normally occur[red] during the course of running a lottery" and were clearly expenses of the unlawful enterprise. *Id.* at 2027. The Hourans have not explained how the transactions charged as money laundering in their case were payments that were integral to the bank fraud scheme. Accordingly, the District Court correctly concluded that the Hourans are

not actually innocent of money laundering under *Santos*, and we will affirm.[3]

## III.

For the foregoing reasons, we affirm the District Court's dismissal of Defendants' § 2241 petitions.

---

[3] In light of this holding, we need not address the Government's argument that Tony Houran waived his right to file the instant appeal.