NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-3838

_____

UNITED STATES OF AMERICA

v.

DAVID MORO,
Appellant

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 2-09-cr-00137-001)
District Judge: Honorable William H. Walls

_____

Submitted Under Third Circuit LAR 34.1(a)
November 13, 2012

Before:  RENDELL, FUENTES and CHAGARES, Circuit Judges

(Opinion Filed:  November 29, 2012)

_____

OPINION OF THE COURT

_____

RENDELL, Circuit Judge.

On November 16, 2010, after a six-week trial, Appellant David Moro was

convicted of thirty-three counts of conspiracy, mail and wire fraud, bank fraud, money

laundering, and making false statements to government officials.  On October 12, 2011,

Judge Walls sentenced Moro to a term of imprisonment of 126 months, to be followed by

a five-year term of supervised release.  Additionally, Judge Walls ordered Moro to pay restitution totaling $3,589,350 to various victims.  Moro's appeal is currently before this Court.  For the reasons that follow, we will affirm the District Court.

## I.  Background

We write principally for the benefit of the parties and therefore recount only those facts essential to our review.

In 1999, Moro founded Inchon LLC, a company whose purpose was to bring Russian-language radio and Internet-based programs to a global audience.  (App. 2153, 2155.)  In addition to receiving investments to develop Inchon's hardware and software, Inchon also received financing from banks and other lenders for the purpose of acquiring digital servers to further develop Inchon's digital programming.  (App. 68-69, 119, 1013-14, 2169-71.)  The lenders purchased the servers from a vendor, which then leased the servers to Inchon.  (*Id.*)  Moro, however, arranged for the vendor to give Inchon the money the lenders had paid to purchase the servers and used those funds for other purposes.  (App. 1134.)  In other words, instead of applying for the funds directly, Moro used the vendors to obtain funds from the lenders.  (App. 1084, 2192, 2198.)  In connection with these transactions, the government alleged that Moro misrepresented Inchon's financial health, mischaracterized the relationship between the vendors and Inchon, prepared fraudulent tax filings and invoices, and attempted to shift blame for the fraudulent financial information to a fictitious individual.  Moro denied this fraudulent scheme.

2

On February 27, 2009, a grand jury returned a 34-count indictment, charging Moro with one count of conspiracy to commit wire fraud (18 U.S.C. § 1349), six counts of mail fraud (18 U.S.C. § 1341), five counts of wire fraud (18 U.S.C. § 1343), three counts of bank fraud (18 U.S.C. § 1344), seventeen counts of money laundering (18 U.S.C. § 1957), and two counts of making false and fraudulent statements to government officials (18 U.S.C. § 1001). (App. 2853-77.) On September 28, 2010, a jury trial commenced before Judge Walls, and on the fourth day of trial, Moro requested "hybrid" representation, or alternatively, to proceed *pro se*. (App. 255.) The District Court permitted Moro to proceed *pro se*, with "standby counsel," but refused to permit hybrid representation. (App. 281.) Nearly five weeks later, the jury returned a guilty verdict on all counts except for one count of making false and fraudulent statements to government officials.

The instant appeal followed. Moro asserts four issues on appeal: (1) whether the District Court erred in denying Moro's request for "hybrid" representation and whether the District Court properly ensured that Moro's decision to proceed *pro se* was voluntary; (2) whether the District Court erred by permitting the government to present certain evidence; (3) whether Moro's convictions on the money laundering counts were supported by legally sufficient evidence; and (4) whether the District Court erred by commenting on Moro's military service at sentencing.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291. This Court has jurisdiction to review Moro's sentence pursuant to 18 U.S.C. § 3742.

## II. Discussion

### A. "Hybrid" Representation

The first issue on appeal is whether the District Court erred in denying Moro's request for "hybrid" representation and whether the District Court properly ensured that Moro's decision to proceed *pro se* was voluntary. We review a district court's decision addressing a defendant's request for hybrid representation for abuse of discretion. *United States v. Bankoff*, 613 F.3d 358, 373-74 (3d Cir. 2010); *see also United States v. Stevens*, 83 F.3d 60, 66-67 (2d Cir. 1996). We give plenary review as to the voluntariness of a defendant's waiver of the right to counsel. *United States v. Peppers*, 302 F.3d 120, 127 (3d Cir. 2002).

A criminal defendant has no right to "hybrid" representation. *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984). Moreover, a "defendant does not have a constitutional right to choreograph special appearances by counsel." *Id.* Accordingly, the decision to permit a defendant to proceed as "co-counsel" in his own case, or *pro se*, is within the discretion of the District Court. *Bankoff*, 613 F.3d at 373-74 (quoting *Stevens*, 83 F.3d at 67). The District Court refused to permit hybrid representation in this case. (App. 281-82.) We find that the District Court did not abuse its discretion in arriving at that decision.

Moro also claims that the waiver of his right to counsel was involuntary because the District Court erroneously denied his request for hybrid representation, and therefore, he was compelled to proceed *pro se*. Because we find that the District Court did not err in refusing to grant Moro's request for hybrid representation, this claim fails.

4

Furthermore, the record is replete with evidence to suggest that Moro's waiver of counsel was knowing and understanding, and voluntary. *See Peppers*, 302 F.3d at 130-31 (finding that waiver of Sixth Amendment rights must be knowing and understanding, and voluntary). The record affirmatively indicates that Moro clearly and unequivocally declared to the trial judge that he wanted to represent himself; that he was literate, competent, and understanding; and that he was voluntarily exercising his informed free will. *See Faretta v. California*, 422 U.S. 806, 835 (1975). Accordingly, we will affirm the District Court's denial of Moro's request to proceed with hybrid representation and conclude that Moro's waiver of counsel was voluntary.

## B. Prosecutorial Misconduct

Moro also alleges that he was deprived of a fair trial due to prosecutorial misconduct, because the government (1) posed guilt-assuming hypothetical questions to witnesses, (2) asked a witness what Moro meant in recorded conversations, and (3) used the terms "confession" and "admission" in summation. In reviewing claims of prosecutorial misconduct, the standard of review depends on whether the defendant asserted objections: when contemporaneous objections are asserted, we review the District Court's ruling for abuse of discretion, and any non-contemporaneous objections are subject to plain error review. *United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003). Regardless of what standard of review we apply in this case, we find that the government did not commit misconduct. We cannot find that the questioning by the government was inappropriate – at any rate, it certainly did not rise to a level that warrants setting aside Moro's conviction. Furthermore, the record does not indicate that

5

the government exceeded its "considerable latitude in summation." *United States v. Lee*, 612 F.3d 170, 194 (3d Cir. 2010) (quoting *United States v. Werme*, 939 F.2d 108, 117 (3d Cir. 1991)).

## C. Sufficiency of the Evidence

Next, we address Moro's argument that his convictions on Counts Sixteen through Thirty-Two of the Indictment, for laundering criminally-derived proceeds in violation of 18 U.S.C. § 1957(a), must be reversed because the evidence was legally insufficient to support the jury's verdict. This Court applies a highly deferential standard of review to challenges on sufficiency grounds, *United States v. Hart*, 273 F.3d 363, 371 (3d Cir. 2001), and will only reverse where there is "no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt," *United States v. Mussare*, 405 F.3d 161, 166 (3d Cir. 2005) (quoting *United States v. Anderson*, 108 F.3d 478, 481 (3d Cir. 1997)).

Section 1957(a) of title 18 makes it unlawful for a person to "knowingly engage[] or attempt[] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity." The term "criminally derived property" means "any property constituting, or derived from, proceeds obtained from a criminal offense." 18 U.S.C. § 1957(f)(2). Moro argues that "proceeds," in this case, means "net profits," and that the government failed to prove that the transactions involved net profits. The Supreme Court addressed whether the term "proceeds" in federal money laundering statutes refers to the "gross receipts" or the "net profits" from a criminal enterprise in *United States v. Santos*, 553 U.S. 507 (2008).

6

Justice Stevens' controlling concurring opinion concluded that "proceeds" means "net profits" only where a merger problem increases a defendant's sentencing exposure in a way Congress could not have intended. *Id.* at 525, 528 n.7. Additionally, in the Third Circuit, "proceeds are derived from an already completed offense, or a completed phase of an ongoing offense, before they can be laundered." *United States v. Yusuf*, 536 F.3d 178, 186 (quoting *United States v. Conley*, 37 F.3d 970, 980 (3d Cir. 1994)).

In this case, each fraud offense was complete when the victimized lender sent money to vendors. (App. 2861-70.) The § 1957 offenses charge the subsequent transfers of those fraudulent proceeds to Inchon. (App. 2871-72.) Thus, those subsequent transfers were not essential elements of the completed fraud offenses, and there was therefore no merger problem. *See Abuhouran v. Grondolsky*, 643 F. Supp. 2d 654, 669 (D.N.J. 2009) ("Whatever was done with the proceeds of each loan was the start of a new activity, a separate crime if done with the requisite intent."), *aff'd* 392 Fed. App'x 78 (3d Cir. 2010). Because there was undoubtedly sufficient evidence for the jury to conclude that the transfers charged in Counts 16-32 involved the "gross proceeds" of the fraud offenses charged in Counts 2-15, Moro's sufficiency challenge fails.

### D. Sentencing

Finally, we address Moro's argument that the District Court erred during sentencing by treating Moro's military service as an aggravating factor. It is clear from the record that the District Court did not treat Moro's military service as an aggravating factor at sentencing. Therefore, we conclude that the District Court did not err, and accordingly, we will affirm Moro's sentence.

7

### III. Conclusion

For the reasons stated above, we will affirm the judgment of the District Court.