**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-4258**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

BRICETON GRANT,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  T. S. Ellis, III, Senior District Judge.  (1:16-cr-00062-TSE-1)

Argued:  May 9, 2017                                      Decided:  July 6, 2017

Before MOTZ, SHEDD, and DUNCAN, Circuit Judges.

Affirmed by published opinion.  Judge Motz wrote the opinion, in which Judge Shedd and Judge Duncan joined.

**ARGUED:** Nicholas John Xenakis, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Christopher John Catizone, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:** Geremy C. Kamens, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Dana J. Boente, United States Attorney, Angelissa D. Savino, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

DIANA GRIBBON MOTZ, Circuit Judge:

After the Government prematurely released Briceton Grant from prison, Grant sought credit for the time he erroneously spent at liberty. Assuming federal common law offers such relief, the district court did not improperly deny him this credit. Accordingly, we affirm the judgment of the district court.

I.

On April 28, 2015, Grant pled guilty to a one-count information in the Eastern District of Virginia charging him with possession of phencyclidine ("PCP"), in violation of 21 U.S.C. § 844(a) (2012). That same day, a magistrate judge sentenced him to one year of supervised probation, subject to certain conditions. One of these conditions prohibited Grant from committing any federal, state, or local crime during the one-year period of probation.

Four days later, on May 2nd, the Fredericksburg, Virginia Police Department arrested Grant and charged him with possession with intent to distribute marijuana and possession with intent to distribute a Schedule I/II drug. The federal Probation Office filed a petition asking the federal court to order Grant to appear and show cause why, in light of his state arrest, the court should not revoke his supervised probation.

On February 16, 2016, a federal magistrate judge found Grant in violation of his supervised probation and remanded him to the custody of federal marshals for fifteen days of incarceration as punishment for the violation. On February 19, 2016 — eleven days too early — the marshals erroneously allowed Grant to be released from custody.

2

The Government acknowledges that it bears sole responsibility for this mistake and that it first learned about the erroneous release a few days later from Grant's attorney, who had called to ask how to proceed given the error.

After receiving the call from Grant's attorney, the Probation Office filed a second petition on February 25, 2016. This petition alleged that Grant had "fail[ed] to serve fifteen (15) days [in] jail as directed by the Court," and therefore sought to have Grant remanded into federal custody for eleven more days. Grant surrendered to the marshals on February 29, 2016.

Before the magistrate judge acted on the petition, Grant filed a motion to receive credit for the ten days during which he was mistakenly released. The magistrate judge denied the motion but allowed him to serve these ten days intermittently "on weekends or other days" because Grant had obtained employment while at liberty. The judge also agreed to stay her order if Grant chose to appeal. Grant appealed the magistrate judge's order to the district court, which also denied his motion. *United States v. Grant*, 184 F. Supp. 3d 250, 255 (E.D. Va. 2016). Grant subsequently noted this appeal, and the district court stayed its order pending our decision.[1]

We review a district court's factual findings for clear error, its legal conclusions de novo, and the ultimate application of law to facts for abuse of discretion. *See Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 59 F.3d 219, 226 (4th Cir. 2009).

---

[1] At the conclusion of his hearing before the district court, Grant served one additional day in prison. Thus, although the Government released him eleven days early, an award of ten days credit would entirely eliminate any balance remaining on Grant's sentence.

II.

Individuals seeking credit for time erroneously spent at liberty have grounded their requests in either the Constitution or the common law. In the only instance in which we have considered a claim of credit for time erroneously spent at liberty, a state prisoner filed a habeas petition under 28 U.S.C. § 2254 asserting a substantive due process right. *See Hawkins v. Freeman*, 195 F.3d 732, 735 (4th Cir. 1999) (en banc). We rejected the claim and concluded that the Constitution did not bar re-incarceration following a prisoner's premature, negligent release from prison. *Id.* at 750. In those situations, we explained, a state prisoner's recourse "must be found . . . by courts applying state common law and equitable principles, or by executive clemency." *Id.*[2]

An appellate court first recognized a federal common law right to credit for time erroneously spent at liberty in *White v. Pearlman*, 42 F.2d 788, 789 (10th Cir. 1930). In *White*, the warden informed a prisoner that his time in prison had ended and, over the prisoner's objection that the warden was incorrect, "the prisoner was 'dressed out,' paid up, given a discharge, and furnished with transportation" out of the prison. *Id.* In a brief opinion addressing these facts, the *White* court granted the requested credit, explaining

---

[2] While we have never before addressed a prisoner's attempt to receive credit under federal common law for time erroneously spent at liberty, a number of district courts in this circuit have considered such a claim. *See, e.g.*, *Johnson v. Mathieson*, No. 3:15-cv-203, 2015 WL 3772776 (E.D. Va. June 16, 2015); *Lee v. Wilson*, No. 1:11-cv-981, 2012 WL 3069407 (E.D. Va. July 26, 2012); *Bradford v. Rivera*, No. 9:11-cv-00462-RBH, 2011 WL 5827601 (D.S.C. Nov. 18, 2011); *Priester v. Rivera*, No. 3:07-2787-RBH, 2008 WL 4132217 (D.S.C. Aug. 29, 2008).

that "where a prisoner is discharged from a penal institution, without any contributing fault on his part, . . . his sentence continues to run while he is at liberty." *Id.*

Since then, several of our sister circuits have also recognized, at least to some degree and in some circumstances, a federal common law right to credit for time erroneously spent at liberty. *See Espinoza v. Sabol*, 558 F.3d 83, 88–89 (1st Cir. 2009); *Vega v. United States*, 493 F.3d 310, 318 (3d Cir. 2007); *Free v. Miles*, 333 F.3d 550, 554 (5th Cir. 2003); *Dunne v. Keohane*, 14 F.3d 335, 336–37 (7th Cir. 1994); *Kiendra v. Hadden*, 763 F.2d 69, 72–73 (2d Cir. 1985); *United States v. Croft*, 450 F.2d 1094, 1097 (6th Cir. 1971); *Smith v. Swope*, 91 F.2d 260, 262 (9th Cir. 1937). In these cases, the courts, regardless of the precise framework used to determine a prisoner's entitlement to credit, universally apply two principles. First, a prisoner may not receive credit if he had a role in creating his premature release. *See, e.g.*, *Espinoza*, 558 F.3d at 90. Second, a prisoner has a right to credit if the Government maliciously caused his premature release. *See, e.g.*, *Dunne*, 14 F.3d at 336–37.[3]

Fashioning the appropriate approach in a case, like the one at hand, involving neither of these scenarios has proved more difficult. Some courts will not award credit unless the Government acted maliciously. The Fifth Circuit, for example, has characterized the "sole purpose" of granting credit for time at liberty as "prevent[ing] the

_____

[3] The Fifth and Eleventh Circuits also utilize a third dispositive rule. They categorially deny credit to all prisoners whose claims for credit stem from a delayed commencement of their prison terms. *See Little v. Holder*, 396 F.3d 1319, 1321–22 (11th Cir. 2005); *Leggett v. Fleming*, 380 F.3d 232, 234 (5th Cir. 2004). Given that Grant had begun his prison sentence when the Government erroneously released him, we need not consider this distinction here.

5

government from abusing its coercive power to imprison a person by artificially extending the duration of his sentence through releases and re-incarcerations." *Free*, 333 F.3d at 554. Similarly, the Seventh Circuit has described "the core area of [the common law rule's] application" as occasions in which "the government is trying to delay the expiration of the defendant's sentence." *Dunne*, 14 F.3d at 336–37.

On the other hand, some courts award credit whenever the Government errs, even if it was merely negligent. Thus, the Ninth Circuit has promulgated a categorical rule awarding credit whenever the Government mistakenly releases a prisoner. *See Swope*, 91 F.2d at 262 ("The prisoner . . . must be deemed to be serving [his time] from the date he is ordered to serve it . . . if, without his fault, the marshal neglects to place him in the proper custody."). Similarly, although the Second, Sixth, and Tenth Circuits have engaged in a detailed, fact-bound discussion before awarding credit, each appears to anchor its analysis in a similar categorical rule. *See Kiendra*, 763 F.2d at 72–73 (following *Swope*); *Croft*, 450 F.2d at 1099 (same); *White*, 42 F.2d at 789.

The Third Circuit has formulated its own approach. In *Vega*, that court adopted a burden-shifting framework to decide whether to award credit. Under it, the prisoner bears the initial burden of "demonstrat[ing] that he has been released despite having unserved time remaining on his sentence." *Vega*, 493 F.3d at 319. If the prisoner does so, the burden then shifts to the Government, which must "prove either (1) that there was no negligence on the part of the imprisoning sovereign, or (2) that the prisoner obtained or retained his liberty through his own efforts." *Id.*

With this background in mind, we turn to Grant's claim for credit in this case.

6

III.

We note at the outset of our analysis that we are not at all sure a federal common law right to credit for time erroneously spent at liberty currently exists. As the First Circuit has noted, legal developments in the decades since *White* cast some doubt on the current validity of the doctrine. *Espinoza*, 558 F.3d at 88. For example, the Sentencing Reform Act of 1984 created an intricate system governing not only the imposition of criminal sentences, *see Beckles v. United States*, 137 S. Ct. 886, 893 (2017), but their administration as well, *see United States v. Wilson*, 503 U.S. 329, 331–33 (1992). But given our holding in the case at hand, we need not determine the continuing availability of such a credit. Rather, we assume, without deciding, that in some circumstances, federal common law offers prisoners the possibility of credit for time erroneously spent at liberty.

As the parties recognize, neither of the two factors courts regard as dispositive — the prisoner's role and the Government's malice — is at issue here. Grant played no role in causing the premature release, and the Government did not act with malice when it negligently released him.

Grant argues that the *Vega* test should apply in cases where the Government non-maliciously causes a premature release of a prisoner. *Vega* itself recognized that credit for time erroneously spent at liberty serves several interests. These include "the prisoner's interest in serving his sentence in a continuous and timely manner, the need to limit the arbitrary use of governmental power, and the government's and society's interest in making sure a prisoner pays the debt he owes to society." 493 F.3d at 319.

7

Awarding credit also implicates a prisoner's interest in reintegrating into the community, the Government's interest in incentivizing prisoners to self-report any erroneous release, and society's general interest in achieving a balance of equities. Even assuming that mere negligence on the Government's part does not preclude credit, *but see Free*, 333 F.3d at 554; *Dunne*, 14 F.3d at 336–37, the award of such relief must attempt to accommodate all these interests and not simply prioritize one.

In refusing to apply the *Vega* test, the district court reasoned that it "is too narrow to account for all the circumstances that may arise in various cases of erroneously granted liberty." *Grant*, 184 F. Supp. 3d at 253. We agree. To be sure, *Vega* strongly deters the Government from erroneously releasing prisoners before the end of their sentence, and such deterrence certainly constitutes an interest worth promoting. But under the *Vega* test, this deterrence interest would nearly always automatically trump all other interests. For if a prisoner does not cause his own premature release, *Vega* mandates that a prisoner receive credit unless the Government can prove that it was not negligent. Since the Government rarely, if ever, has an incentive to release a prisoner prematurely, a prisoner would all but certainly, with the single exception identified in *Vega* of miscommunication between different sovereigns, meet this burden. We cannot see, and Grant has not demonstrated, how outside that one category of cases, the *Vega* rule would *ever* deny credit to a prisoner not responsible for his premature release. Due to this failure to adequately consider the multitude of interests an award of credit implicates, we decline to adopt the *Vega* test.

8

Instead, we turn to the various other interests implicated in a decision to award credit for time erroneously spent at liberty because of a premature release. That Grant's underlying conviction and underlying supervised probation violation involved nonviolent drug offenses, and that Grant proactively brought his erroneous release to the Government's attention support his plea for credit. But a number of other interests support the district court's denial of credit. Grant seeks ten days of credit for a fifteen-day sentence; he has paid only one-third of his debt to society. Given that the magistrate judge allowed Grant to serve this ten-day period "on weekends or other days" to accommodate his employment schedule, re-incarceration would (at most) only minimally hinder Grant's reintegration into society. Moreover, Grant's ten days of additional time in prison is by definition short enough to avoid the disruption to a prisoner's life that re-incarceration for a period of months or years might pose. And finally, the Government's promptness in working to correct its mistake upon learning of its error underscores the lack of any malice on its part. *See White*, 42 F.2d at 789. In light of all of these relevant interests, which the district court recognized, we cannot say that the court abused its discretion in denying Grant credit.

Grant argues that even if the district court did not err in balancing the relevant interests when deciding to deny him credit, we must still vacate its order and remand the case because the court relied on two clearly erroneous factual findings in doing so. Specifically, Grant challenges the findings that (1) the Probation Office "took prompt steps to remedy the mistake," and (2) Grant had multiple violations of supervised probation. *Grant*, 184 F. Supp. 3d at 254.

9

The first challenged finding — regarding the Government's prompt response — does not rest on a conclusion as to which party first brought the error of Grant's premature release to the attention of the other. Rather, the finding addresses the speed with which the Government responded *after it learned of its mistake*. Given that only a few days elapsed between the time the Government learned of Grant's mistaken release and its subsequent petition, we cannot say that the district court erred (let alone clearly erred) when it drew the plausible inference that that the Government, upon learning of its error, acted promptly in rectifying its mistake.

The other challenged finding — that Grant had multiple supervised probation violations — is error, albeit one that is both understandable and, ultimately, inconsequential. To be sure, Grant's May 2, 2015 arrest is the only supervised probation violation in the record; the second petition dealt solely with Grant's premature release, for which the Government acknowledges responsibility. However, Grant's May 2, 2015 arrest occurred just four days after the magistrate judge sentenced him for his possession of PCP conviction. Although the district court referred to Grant's multiple violations of supervised probation, it also characterized Grant as "a repeat offender," something that is indisputably true. *See Grant*, 184 F. Supp. 3d at 254. Thus, it was not unreasonable for the court to conclude that Grant's multiple drug arrests — with the second coming a mere four days after his sentencing on the first — undermined any equitable case for awarding him credit. At a minimum, we have no trouble affirming on the basis that Grant's pair of drug arrests, occurring so close in time to each other, in combination with all the other interests the district court considered in reaching its decision, rendered harmless any

misconception the court may have had regarding the number of Grant's supervised probation violations. *See* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").

## IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.