FILED

Oct 20 2020, 8:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Terry A. White
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jordan Allen Temme,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

October 20, 2020

Court of Appeals Case No.
20A-CR-275

Appeal from the Vanderburgh
Superior Court

The Honorable Robert J. Pigman,
Judge

Trial Court Cause No.
82D03-1606-F1-3715

**Altice, Judge.**

## Case Summary

[1] Pursuant to a negotiated plea agreement, Jordan Allen Temme was convicted, under two separate causes, of two Level 6 felonies and eight misdemeanors and was sentenced to an aggregate executed term of nine years. The trial court's sentencing order allocated credit time between certain counts, with the bulk – 450 days of credit – applied toward three of the misdemeanors under this cause.

[2] Due to an error by the Indiana Department of Correction (DOC) regarding application of Temme's presentence credit time, he was released from incarceration with about two and one-half years still remaining on his executed sentence. This resulted from Temme's term of imprisonment being served in prison (for the felony offenses) and the local jail (for the misdemeanor offenses), and the misdemeanor credit time – 450 days – being applied erroneously to each stint of imprisonment.

[3] Within a month of Temme's erroneous release, the State filed a motion with the trial court to re-examine credit time. Temme never denied that an error occurred, but he asked the court to apply the doctrine of "credit for time erroneously at liberty" (the Doctrine) or, in the alternative, to permit him to serve the remainder of his sentence on work release through community corrections. The trial court denied Temme's motions and ordered that he serve the remainder of his executed time in prison. The trial court, however, stayed the matter pending appeal. Temme now appeals and asks that, as a matter of

first impression in Indiana, we adopt the Doctrine and apply it here, where he was negligently released early by the DOC through no fault of his own.

[4] We affirm.[1]

### Facts & Procedural History

[5] In June 2016, the State charged Temme under the instant cause, No. 82D03-1606-F1-3715 (Cause F1-3715), with two counts of Level 1 felony rape (Counts 1 and 2) and one count of Level 3 felony criminal confinement (Count 3). The next month, the State amended the criminal information and added one count of Level 6 felony unlawful possession of a syringe (Count 4) and five counts of Class A misdemeanor possession of a controlled substance (Counts 5-9). The State amended the information once again in November 2017 by adding one count each of Class A misdemeanor operating while intoxicated (Count 10), Class A misdemeanor battery (Count 11), and Class B misdemeanor public intoxication (Count 12).

[6] Temme remained in jail since June 24, 2016, unable to post bond. In the meantime, the State filed a separate criminal action against Temme in September 2017, under cause No. 82D03-1709-F6-5758 (Cause F6-5758), for attempted obstruction of justice, a Level 6 felony.

---

[1] We conducted a virtual oral argument in this case on September 22, 2020. We thank counsel for their excellent advocacy and presentations.

[7] On November 17, 2017, Temme and the State reached an agreement pursuant to which the State agreed to dismiss Counts 1 through 3 and Temme agreed to plead guilty to the remaining nine counts under Cause F1-3715 and the one count in Cause F6-5758. The plea agreement also provided for a total executed sentence of nine years.

[8] On December 20, 2017, the trial court sentenced Temme and applied credit time for his pretrial confinement as follows:

| Count 4 | 2.5 years | executed | 1 day credit |
|---|---|---|---|
| Count 5 | 1 year | executed | |
| Count 6 | 1 year | 180 days executed | |
| Count 7 | 1 year | suspended | |
| Count 8 | 1 year | suspended | |
| Count 9 | 1 year | suspended | |
| Count 10 | 1 year | time served | 180 days credit |
| Count 11 | 1 year | time served | 180 days credit |
| Count 12 | ½ year | time served | 90 days credit |
| Cause F6-5758 | 2.5 years | executed | 90 days credit |

All terms were ordered to be served consecutively. Thus, Temme received an aggregate sentence of twelve and one-half years, with three and one-half of those years suspended (nine executed) and credit for 541 days. With respect to Cause F1-3715, the trial court expressly indicated that one day of credit time went toward the felony conviction and 450 days of credit time went toward the misdemeanor convictions under Counts 10 through 12.

[9] Temme's credit status and time yet to be served were calculated by the DOC upon his arrival at the Reception and Diagnostic Center (RDC). The intake staff incorrectly applied the misdemeanor credit time of 450 days toward his felony sentences. As a result, he was erroneously released from prison on October 4, 2018, to the custody of the Vanderburgh County Jail[2] to serve his misdemeanor sentences. He was also released from parole. The jail staff then applied the same 450 days of credit to the service of his misdemeanor sentences. Temme was released from jail on July 4, 2019, having served essentially no time for his felony conviction under F1-3715 (the time he did serve in prison completed his felony sentence under F6-5758).

[10] On July 25, 2019, three weeks after Temme's release from jail, the State filed a Motion Requesting the Court to Re-examine Defendant's Credit Time. The trial court held a hearing on the State's motion on September 6 and October 1, 2019. On the second day of the hearing, Jennifer Farmer, Director of the

---

[2] For part of the time, Temme was placed at the Jefferson County Jail due to overcrowding.

Sentence Computation and Release Section of the DOC, testified. Farmer explained the DOC error, which resulted in Temme's early release, and noted that the mistake was missed at every level within the DOC. She also acknowledged that Temme did not contribute to the error and had no conduct marks against him.

[11] Temme testified that when he checked his projected release date in February 2019 and was told it would be in July 2019, he "knew that wasn't correct." *Transcript* at 28. He and his sister contacted the jail and the RDC to "get answers" and were assured the release date was correct. *Id*. Temme also contacted his attorney about the matter and then "kinda left it as that." *Id*. Upon his early release in July 2019, Temme moved in with his parents and immediately returned to work as a pipefitter with his prior employer.

[12] At the end of the hearing on October 1, 2019, the trial court took the matter under advisement and gave the parties ten days to submit legal authority, which they did. Thereafter, on November 11, 2019, the trial court held a pretrial conference and scheduled a review hearing for January 6, 2020.

[13] On January 3, 2020, Temme filed a Motion to Award Credit Time for Time Erroneously at Liberty, Motion for Remainder of Executed Sentence to be Served in Community Corrections, and Motion to Modify Sentence to Community Corrections. At the hearing on January 6, 2020, the trial court denied the motions filed by Temme and ordered him back to the DOC to complete his sentence. The trial court stayed the order pending appeal and

directed Temme to be monitored by the Vanderburgh County Probation Department during his release. Temme now appeals, challenging only the denial of his Motion to Award Credit Time for Time Erroneously at Liberty.

### Discussion & Decision

Temme asserts that it is "draconian to re-incarcerate a faultless rehabilitated prisoner because of the government's negligence in delaying the expiration of his sentence." *Appellant's Brief* at 11. Relying on cases from other jurisdictions, Temme urges us to adopt the Doctrine and apply it here because (1) he had clean hands (i.e., was not at fault for his time spent at liberty) and (2) the government was negligent in releasing him early due to the DOC's miscalculation of credit time.

The Doctrine is an equitable doctrine, pursuant to which "a defendant mistakenly released for a short period of time or with a lesser degree of governmental fault will be granted day-for-day credit." Gabriel J. Chin, *Getting Out of Jail Free: Sentence Credit for Periods of Mistaken Liberty*, 45 Cath. U. L. Rev. 403, 404 (1996). Although there is variability in its application, the Doctrine has strong roots in federal jurisprudence and has been adopted in many states. *See generally* Andrew T. Winkler, *Implicit in the Concept of Erroneous Liberty: The Need to Ensure Proper Sentence Credit in the Fourth Circuit*, 35 N.C. Cent. L. Rev. 1, 17 (2012); Danielle E. Wall, Note, *A Game of Cat and Mouse-or Government and Prisoner: Granting Relief to an Erroneously Released Prisoner in Vega v. United States*, 53 Vill. L. Rev. 385, 400 (2008); Chin, *supra*, 45 Cath. U. L. Rev. 403.

The Doctrine's origin can be traced to *White v. Pearlman*, 42 F.2d 788 (10th Cir. 1930). In that case, the prisoner had been released through no fault of his own and was "brushed aside" when he attempted to call attention to the mistake. *Id*. at 789. The Tenth Circuit held that "where a prisoner is discharged from a penal institution, without any contributing fault on his part, and without violation of conditions of parole, [ ] his sentence continues to run while he is at liberty." *Id*.

While courts vary in their interpretation and application of the Doctrine, adopting courts "generally agree upon the 'power of the government to recommit a prisoner who is released or discharged by mistake, where his sentence would not have expired if he had remained in confinement.'" *Vega v. United States*, 493 F.3d 310, 315 (3d Cir. 2007) (quoting *Pearlman*, 42 F.2d at 789); *see also Green v. Christiansen*, 732 F.2d 1397, 1399 (9th Cir. 1984) ("A ministerial mistake does not necessarily excuse Green from serving the rest of his sentence."). "In other words, a mistaken release does not prevent a government from reincarcerating a prisoner who has time to serve. The question is whether he should be given credit against his sentence for the time he was at liberty." *Vega*, 493 F.3d at 316.

The prevailing federal common law rule is based on the following reasoning, as expressed by Judge Posner:

> [U]nless interrupted by fault of the prisoner (an escape, for example) a prison sentence runs continuously from the date on which the defendant surrenders to begin serving it. The

government is not permitted to delay the expiration of the sentence either by postponing the commencement of the sentence or by releasing the prisoner for a time and then reimprisoning him. *United States v. Melody*, 863 F.2d 499, 504 (7th Cir. 1988); *Cox v. United States*, [] 551 F.2d [1096,] 1099 [(7th Cir. 1977)]; *Shields v. Beto*, 370 F.2d 1003, 1006 (5th Cir. 1967); *White v. Pearlman*, 42 F.2d 788 (10th Cir. 1930); *Ex parte Eley*, 9 Okl.Cr. 76, 130 Pac. 821 (App. 1913); *In re Strickler*, 51 Kan. 700, 33 Pac. 620 (1893). So, for example, if the sentence is five years and the defendant begins to serve it on July 1, 1990, the government cannot, by releasing him between January 1, 1992, and December 31, 1992, postpone the expiration of his sentence from June 30, 1995, to June 30, 1996 – cannot in fact postpone it a day beyond June 30, 1995. The sentence expires on schedule even though the defendant will have served four years rather than five. The government is not permitted to play cat and mouse with the prisoner, delaying indefinitely the expiation of his debt to society and his reintegration into the free community. Punishment on the installment plan is forbidden.

*Dunne v. Keohane*, 14 F.3d 335, 336 (7th Cir. 1994). "[T]he core principle upon which the doctrine rests [is that] the government is not permitted to delay the expiration of a prisoner's sentence." Winkler, *supra*, 35 N.C. Cent. L. Rev. at 17.

[19] The Ninth Circuit has explained that under the Doctrine, "a convicted person is entitled to credit against his sentence for the time he was erroneously at liberty provided there is a showing of simple or mere negligence on behalf of the government and provided the delay in execution of sentence was through no fault of his own." *United States v. Martinez*, 837 F.2d 861, 865 (9th Cir. 1988); *see also Vega*, 493 F.3d at 319 (placing burden on the government to avoid

application of the Doctrine by proving either "(1) that there was no negligence on the part of the imprisoning sovereign, or (2) that the prisoner obtained or retained his liberty through his own efforts"). This is essentially the test advanced by Temme for our adoption.

[20] The State's primary argument is that we should refuse to adopt the Doctrine from federal common law because it is barred by statute in Indiana. Specifically, the State asserts that our courts "cannot grant any form of credit against a sentence unless authorized by the General Assembly." *Appellee's Brief* at 14 (citing *Hickman v. State*, 81 N.E.3d 1083, 1085 (Ind. Ct. App. 2017) ("credit time is a statutory right")). Because Temme was neither imprisoned nor confined following his erroneous early release, the State argues that he could not be accruing time toward his sentence. *See* Ind. Code § 35-50-6-0.5(1) (definition of "accrued time" as "the amount of time that a person is imprisoned or confined").

[21] Alternatively, the State suggests that if we adopt the Doctrine in Indiana, we consider the balancing test recently applied by the Fourth Circuit in *United States v. Grant*, 862 F.3d 417 (4th Cir. 2017). In *Grant*, the court set out the background of federal jurisprudence since *Pearlman*:

> Since then, several of our sister circuits have also recognized, at least to some degree and in some circumstances, a federal common law right to credit for time erroneously spent at liberty. *See Espinoza v. Sabol*, 558 F.3d 83, 88-89 (1st Cir. 2009); *Vega v. United States*, 493 F.3d 310, 318 (3d Cir. 2007); *Free v. Miles*, 333 F.3d 550, 554 (5th Cir. 2003); *Dunne v. Keohane*, 14 F.3d 335,

336–37 (7th Cir. 1994); *Kiendra v. Hadden*, 763 F.2d 69, 72-73 (2d Cir. 1985); *United States v. Croft*, 450 F.2d 1094, 1097 (6th Cir. 1971); *Smith v. Swope*, 91 F.2d 260, 262 (9th Cir. 1937). In these cases, the courts, regardless of the precise framework used to determine a prisoner's entitlement to credit, universally apply two principles. First, a prisoner may not receive credit if he had a role in creating his premature release. Second, a prisoner has a right to credit if the Government maliciously caused his premature release.

Fashioning the appropriate approach in a case, like the one at hand, involving neither of these scenarios has proved more difficult. Some courts will not award credit unless the Government acted maliciously. The Fifth Circuit, for example, has characterized the "sole purpose" of granting credit for time at liberty as "prevent[ing] the government from abusing its coercive power to imprison a person by artificially extending the duration of his sentence through releases and re-incarcerations." *Free*, 333 F.3d at 554. Similarly, the Seventh Circuit has described "the core area of [the common law rule's] application" as occasions in which "the government is trying to delay the expiration of the defendant's sentence." *Dunne*, 14 F.3d at 336-37.

On the other hand, some courts award credit whenever the Government errs, even if it was merely negligent. Thus, the Ninth Circuit has promulgated a categorical rule awarding credit whenever the Government mistakenly releases a prisoner. *See Swope*, 91 F.2d at 262 ("The prisoner ... must be deemed to be serving [his time] from the date he is ordered to serve it ... if, without his fault, the marshal neglects to place him in the proper custody."). Similarly, although the Second, Sixth, and Tenth Circuits have engaged in a detailed, fact-bound discussion before awarding credit, each appears to anchor its analysis in a similar categorical rule. *See Kiendra*, 763 F.2d at 72-73 (following *Swope*); *Croft*, 450 F.2d at 1099 (same); [*Pearlman*], 42 F.2d at 789.

> The Third Circuit has formulated its own approach. In *Vega*, that court adopted a burden-shifting framework to decide whether to award credit. Under it, the prisoner bears the initial burden of "demonstrat[ing] that he has been released despite having unserved time remaining on his sentence." *Vega*, 493 F.3d at 319. If the prisoner does so, the burden then shifts to the Government, which must "prove either (1) that there was no negligence on the part of the imprisoning sovereign, or (2) that the prisoner obtained or retained his liberty through his own efforts." *Id*.

*Grant*, 862 F.3d at 420 (footnote omitted).

[22] The *Vega* court indicated that the Doctrine serves "the prisoner's interest in serving his sentence in a continuous and timely manner, the need to limit the arbitrary use of governmental power, and the government's and society's interest in making sure a prisoner pays the debt he owes to society." *Vega*, 493 F.3d at 319. The *Grant* court added to this list: "Awarding credit also implicates a prisoner's interest in reintegrating into the community, the Government's interest in incentivizing prisoners to self-report any erroneous release, and society's general interest in achieving a balance of equities." *Grant*, 862 F.3d at 421. The *Grant* court emphasized that "the award of such relief must attempt to accommodate all these interests" and faulted the *Vega* court for unduly prioritizing one interest, deterring the government from erroneously releasing prisoners early. *Id*.

[23] Ultimately, the *Grant* court balanced the various interests implicated in a decision to award credit for time erroneously spent at liberty as follows:

> That Grant's underlying conviction and underlying supervised probation violation involved nonviolent drug offenses, and that Grant proactively brought his erroneous release to the Government's attention support his plea for credit. But a number of other interests support the district court's denial of credit. Grant seeks ten days of credit for a fifteen-day sentence; he has paid only one-third of his debt to society. Given that the magistrate judge allowed Grant to serve this ten-day period "on weekends or other days" to accommodate his employment schedule, re-incarceration would (at most) only minimally hinder Grant's reintegration into society. Moreover, Grant's ten days of additional time in prison is by definition short enough to avoid the disruption to a prisoner's life that re-incarceration for a period of months or years might pose. And finally, the Government's promptness in working to correct its mistake upon learning of its error underscores the lack of any malice on its part.

*Id*. at 421-22 (internal citation omitted). The court affirmed the denial of relief to Grant.

[24] Although the balancing approach applied in *Grant* is appealing, we do not adopt it – or any other test set out above – as common law in this state because the award of credit time is covered by statute, and the type of credit sought in this case is not the type authorized by the General Assembly.[3] *Cf. State v. Friedlander*, 923 N.W.2d 849, 863 n.12 (Wis. 2019) ("While it might be tempting to pick and choose a case from another jurisdiction to lend support for granting or not granting sentence credit, that exercise is of little value without

---

[3] *See* Ind. Code Chap. 35-50-6 (containing fourteen sections addressing release from imprisonment and/or credit time).

also considering the facts and law underlying that decision. Instead of turning to other jurisdictions for guidance, we rely upon Wisconsin's comprehensive sentence credit statutes, [among other things]."). Thus, we cannot look to equity to grant the relief requested by Temme based on the DOC's simple negligence in releasing him early.

Our rejection of this equitable, common law doctrine does not, however, mean that an erroneously released prisoner in this state can never be entitled to credit for time erroneously at liberty. Federal substantive due process guarantees still remain applicable.[4] Under these constitutional guarantees, an individual is entitled to relief where the State's actions "are so affirmatively improper or grossly negligent that it would be unequivocally inconsistent with 'fundamental principles of liberty and justice' to require a legal sentence to be served in its aftermath." *See Martinez*, 837 F.2d at 864 (failure to order the execution of sentence for over seven years was not found to be so affirmatively wrong or grossly negligent that fundamental fairness was violated); *see also Vega*, 493 F.3d at 316 (noting that federal substantive due process challenges to government action present "the threshold question [of] whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to

---

[4] Decisions relying upon due process are distinct from the Doctrine and grant "absolute discharge, rather than day-for-day credit, as a remedy for delay in commencing or continuing a sentence." Chin, *supra*, 45 Cath. U. L. Rev. at 418. "These cases hold that the government has waived jurisdiction, or is estopped from reincarcerating the defendant based on misconduct going beyond mere negligence." *Id.*; *see also Vega*, 493 F.3d at 317("We are … unable to conclude that credit for time spent at liberty is among those 'fundamental principles of liberty and justice which lie at the base of all our civil and political institutions.'") (quoting *Powell v. Alabama*, 287 U.S. 45, 67 (1932)).

shock the contemporary conscience.") (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8, (1998)).

[26] In this case, Temme has not shown that the government's actions were anything beyond mere negligence, and he has failed to expound on any substantive due process arguments based on waiver or estoppel. We find particularly notable here that the State discovered and attempted to rectify the DOC's negligence within three weeks of Temme's erroneous release. The circumstances of this case simply do not rise to the level of conduct "so affirmatively improper or grossly negligent" by the government as to rise to the level of a due process violation.

[27] We sympathize with Temme's plight and commend him on his effective reintegration into society. Indeed, by all accounts, Temme has been a hard-working, law-abiding citizen since his release from incarceration some fifteen months ago. The DOC's inadvertent and quickly-discovered error in this case, however, does not operate under the law of this state to cancel any part of Temme's punishment for the crimes for which he was justly convicted and sentenced. Accordingly, we conclude that the trial court did not err in denying Temme's Motion to Award Credit Time for Time Erroneously at Liberty.[5]

---

[5] Temme does not appeal the denial of his motions to modify sentence and to serve the remainder of his sentence in community corrections. Therefore, we do not review these ruling. We observe, however, that had the court ordered Temme to serve his time through community corrections rather than simply staying execution of his sentence pending appeal, he could have been accruing time toward his sentence. Of course,

Judgment affirmed.

May, J. and Robb, J., concur.

---

Temme may file another petition with the trial court to seek such placement, noting the unique circumstances of this case and his good behavior during the lengthy proceedings following his early release.